Frank ENTEL and Goldie Entel, Plaintiffs,

v.

George E. ALLEN et al., Defendants.

Herman A. GELMAN, Plaintiff,

v.

Edward R. FARLEY, Jr., et al., Defendants.

Nos. 64 Civ. 4048, 64 Civ. 3827.

United States District Court
S. D. New York.

Jan. 31, 1967.
On Rehearing June 7, 1967.

---

Abraham I. Markowitz, New York City, for plaintiffs.

Simpson, Thacher & Bartlett, New York City, for defendants Ira Guilden, and others; Roy L. Reardon, Joseph J. Ackell, New York City, of counsel.

Chester C. Davis, New York City, for defendant Hughes Tool Co.; Paul J. Goldberg, New York City, of counsel.

Roth, Carlson, Kwit & Spengler, New York City, for defendant Atlas Corp.; Robert S. Carlson, New York City, of counsel.

## OPINION

BONSAL, District Judge.

The defendants in the above named actions, except defendants Atlas Corporation (Atlas) and Northeast Airlines, Inc. (Northeast), move pursuant to Rule 56 (b) of the Federal Rules of Civil Procedure for an order dismissing the complaints and granting summary judgment in favor of the moving defendants, or, in the alternative, for an order pursuant to Rule 2 of the Civil Rules of this court requiring plaintiffs to post an original bond for costs in the amount of $5,000.

In the Entel action, defendant Atlas moves pursuant to Rule 30(b) of the Federal Rules of Civil Procedure for an order conditioning the taking of Atlas's deposition upon plaintiffs' first posting $75,000 security for the reasonable expenses which may be incurred by Atlas under Section 627 of the New York Business Corporation Law, McKinney's Consol.Laws, c. 4 and staying all other proceedings on the part of the plaintiffs, except to review such order, until plaintiffs' compliance therewith.

Plaintiffs are and, during the period complained of, were stockholders of Atlas or holders of negotiable stock purchase warrants issued by Atlas. Plaintiffs in both actions sue on behalf of themselves, representatively on behalf of all other stockholders of Atlas similarly situated, and derivatively on behalf of Atlas. The complaints allege that the defendants violated common law fiduciary duty and certain provisions of the Securities Exchange Act of 1934 (the 1934 Act), the Investment Company Act of 1940 (the 1940 Act), and the Federal Aviation Act of 1958 (the 1958 Act) in negotiating and consummating a sale by Atlas of its common stock and promissory notes of Northeast to Hughes Tool Company (Toolco).

It is conceded that from 1940 to July 16, 1962 Atlas was a registered investment company under the 1940 Act; that in December, 1961: (1) Atlas owned 996,226 shares of the common stock of Northeast, constituting approximately 56% of the total shares outstanding, and $16,251,744 principal amount of Northeast's 5½% Subordinated Promissory Notes payable on demand; and (2) that defendant Howard R. Hughes (Hughes) was the beneficial owner of all of the outstanding stock of Toolco and was the beneficial owner of 1,060,179 shares of the common stock of Atlas, which constituted approximately 10% of Atlas's outstanding voting stock. In December, 1961, Toolco agreed to purchase Atlas's interest in Northeast for $5,000,000 in cash payable 30 days after notice of election to close, provided that such notice

could not be delivered before "all requisite consents, approvals and exemptions of all governmental agencies having jurisdiction in respect of the transactions * * * shall have been obtained and shall have become final."

On January 8, 1962 Toolco, Atlas and Northeast filed a joint application under the 1958 Act with the Civil Aeronautics Board (CAB) for approval of the transaction, and approval was granted by order of the CAB on June 19, 1962. A subsequent petition by Eastern Air Lines and National Airlines for a rehearing of the CAB order was denied.

On March 7, 1962, Atlas filed an application with the Securities and Exchange Commission (SEC) pursuant to Section 17(b) of the 1940 Act for an order exempting the transaction from the provisions of Section 17(a) and on June 20, 1962, the application was granted.

On March 21, 1962, Atlas filed an application with the SEC for an order of deregistration pursuant to Section 8(f) of the 1940 Act. It being necessary to obtain stockholder approval of deregistration, Atlas mailed a proxy statement to its stockholders dated April 14, 1962, which, among other things, sought such approval. Stockholder approval was obtained at a meeting held on May 15, 1962 and by order dated July 16, 1962 the SEC declared that Atlas had ceased to be an investment company. Approval by the stockholders of a restatement of Atlas's accounts as a result of deregistration was sought, and a stockholders' meeting was called for the purpose. The meeting was held on December 18, 1962, at which such approval was obtained. In connection with said meeting, Atlas circulated a proxy statement dated November 14, 1962.

On December 17, 1962, prior to the expiration of the right to judicial review of the CAB orders approving the original transaction and denying a rehearing, Atlas agreed to transfer its interest in Northeast to Toolco in exchange for a $5,000,000 promissory note of Toolco secured by a pledge of the Northeast stock and notes. It was further agreed that

in the event proceedings were initiated for judicial review of the CAB orders, the Toolco note would not mature until 30 days after affirmance of the CAB orders and expiration or exhaustion of any right to further judicial review.

A petition for review of the CAB orders was filed by National Airlines with the Court of Appeals for the District of Columbia and the orders were affirmed on July 3, 1963. The right to further judicial review expired on October 1, 1963, and the Toolco note was paid on October 31, 1963.

■ Plaintiffs allege that in the proceedings before the SEC and the CAB and in the proxy statements mailed to Atlas stockholders, the defendants failed to disclose that Hughes dominated Atlas's Board of Directors, that the sale of Atlas's interest in Northeast was not negotiated at arms length, that the fair value of Atlas's interest in Northeast was much greater than $5,000,000, and that the true consideration received by Atlas was less than $5,000,000. Plaintiffs contend that the inadequacy of the consideration received by Atlas and the nondisclosures in connection therewith constituted violations of Sections 10(b) and 14(a) of the 1934 Act, Section 408 of the 1958 Act, Sections 17(a), 36, and 37 of the 1940 Act, and common law fiduciary duty. For the purposes of the motion for summary judgment, all factual inferences will be taken against the moving defendants and the motion will be granted only if there is no genuine issue as to any material fact. 6 Moore, Federal Practice, ¶ 56, et seq. (2d ed. 1965).

### The 1934 Act

Plaintiffs did not purchase or sell their stock or warrants in Atlas in reliance on representations made in connection with Atlas's sale of its interest in Northeast and plaintiffs do not allege, nor does it appear that they could allege as the basis of a derivative action, that Atlas was deceived in negotiating the sale. Therefore, the complaints fail to state a cause of action under Section

10(b). O'Neill v. Maytag, 339 F.2d 764 (2d Cir. 1964); Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952).

■ Stockholders of Atlas were not asked to approve the sale of Atlas's interest in Northeast in the proxy statements dated April 14, 1962 and November 14, 1962. Therefore, there can be no claim under Section 14(a). J. I. Case v. Borak, 377 U.S. 426, 431, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Hoover v. Allen, 241 F.Supp. 213, 230 (S.D.N.Y.1965).

### The 1958 Act

■ Section 408 of the 1958 Act is directed toward the prevention of monopolistic control of air carriers and the protection of the public interest. See, McLean Trucking Co. v. United States, 321 U.S. 67, 79, 64 S.Ct. 370, 88 L.Ed. 544 (1944). In approving the sale of Atlas's interest in Northeast to Toolco, the CAB was not concerned with the fairness of the consideration received by Atlas. In any event, the CAB "clearly possesses exclusive jurisdiction over any alleged violations of Section 408. See, Trans World Airlines, Inc. v. Hughes, 332 F.2d 602, 613 (2d Cir. 1964). Therefore, the plaintiffs fail to state a cause of action under the 1958 Act.

### The 1940 Act

As noted by the courts of this district, the 1940 Act "is broadly remedial, and circumscribes the investment company business with laws and regulations to an extent exceptional even in the highly controlled securities field." Entel v. Guilden, 223 F.Supp. 129, 133 (S.D.N.Y. 1963); Brown v. Bullock, 194 F.Supp. 207 (S.D.N.Y.1961), aff'd, 294 F.2d 415 (2d Cir. 1961). As evidence of this broad remedial purpose, Section 1(a) of the 1940 Act provides that "investment companies are affected with a national public interest" * * * and "effective State regulation of such companies" is "difficult, if not impossible * * *."

Section 1(b) states that "the national public interest and the interest of investors are adversely affected—* * * (2) when investment companies are * * * managed * * * in the interest of directors, officers, * * * or other affiliated persons thereof * * * rather than in the interest of all classes of such companies' security holders * * *."

To effectuate the purposes of the 1940 Act, Section 17(a) and (b) prohibit securities transactions between investment companies and affiliated persons thereof* unless the SEC determines that the transactions are fair and do not involve overreaching. Sections 36 and 37 provide that the SEC may bring an action for "gross abuse of trust in respect of any registered investment company" and make it a crime to "willfully" convert the assets of such a company.

■■ A violation of the provisions of the 1940 Act may give rise to civil liability. Brown v. Bullock, supra. It is conceded that Atlas was subject to the provisions of the 1940 Act when the original purchase and sale agreement was entered into and from affidavits submitted in support of defendants' motion for summary judgment, it would appear that the transfer of Atlas's interest in Northeast to Toolco in December, 1962 and the final closing of the transaction in October, 1963 were made in substantial compliance with the terms of the original agreement. Since Hughes beneficially owned 10% of the outstanding stock of Atlas through a voting trust and all of the outstanding stock of Toolco, it would appear that Hughes was an affiliated person of Atlas and Toolco as that term is defined by Section 2(a) (3) (A). See, In the Matter of Atlas Corporation, CCH Fed.Sec.L.Rep., '61–'64 Decisions, ¶ 76,857 (SEC 1962), fn. 7 at p. 81,180. At least, plaintiffs' allegations that Hughes, as the largest single stockholder of Atlas, controlled Atlas

---

* Affiliated person is defined in § 2(a) (3) to mean "(A) any person directly or indirectly owning, controlling, or holding with power to vote, 5 per centum or more of the outstanding voting securities" of an investment company or "(C) any person directly or indirectly controlling" an investment company.

raise a question of fact as to whether Hughes was an affiliated person under Section 2(a) (3) (C). If Atlas had not foreseen that Hughes might be considered an affiliated person, it would not have been necessary for it to seek an exemption from the provisions of Section 17(a).

Therefore, if the original agreement was unfair or constituted a gross abuse of trust, plaintiffs may be entitled to relief derivatively on behalf of Atlas. The fact that Atlas was subsequently deregistered is irrelevant since the SEC order declaring that Atlas had ceased to be an investment company in no way purported to relieve Atlas from liability for violations of the 1940 Act, if any, committed prior to deregistration. See, Breswick & Co. v. Briggs, 135 F.Supp. 397 (S.D.N.Y.1955).

Nor are the plaintiffs' rights, if any, barred by the SEC order which exempted the transaction from the provisions of Section 17(a). The order was based solely on the application submitted by Atlas and the only notice to Atlas's stockholders of their right to intervene in the proceeding and request a hearing on the fairness of the transaction was by publication in the Federal Register. Moreover, the doctrines of res judicata and collateral estoppel do not ordinarily apply to decisions of administrative tribunals, Schere v. Christenberry, 179 F. Supp. 900 (S.D.N.Y.1959), and to require plaintiffs to return to the SEC and attempt to reopen the exemption proceeding would be fruitless since the SEC is without power to award the relief sought in this action.

The affidavits and other documents submitted in support of the defendants' motion for summary judgment cast doubt on plaintiffs' ability to prove their allegations of unfairness and gross abuse of trust in violation of the 1940 Act. Plaintiffs, however, have not yet had the opportunity to conduct discovery and their allegations have not been completely controverted. In transactions (between allegedly affiliated persons) of the size herein involved, questions of fairness and gross abuse of trust are complex and, therefore, summary judgment at this point would be premature. Miller v. General Outdoor Advertising Co., 337 F.2d 944 (2d Cir. 1964). See, 6 Moore, Federal Practice, ¶ 56.15 [1–02] (2d ed. 1965).

### Security for Costs and Security for Expenses

Defendants argue that the plaintiffs' allegations are largely a product of hindsight and indeed their affidavits make a strong showing that the consideration paid by Toolco for Atlas's interest in Northeast was not unfair to Atlas. Moreover, plaintiffs made no serious attempt for more than a year and a half after they filed their complaints to prosecute these actions and notices to take depositions upon oral examination were not served until after plaintiffs had received notice that the actions would be called for review on the dismissal calendar pursuant to General Rule 23. Therefore, plaintiffs in each action will be required to post an original bond for costs pursuant to Civil Rule 2 in the nominal amount of $500, pending which all proceedings on the part of plaintiffs will be stayed. See, Leighton v. Paramount Pictures Corp., 340 F.2d 859 (2d Cir. 1965); Miller v. Town of Suffield, 249 F.2d 16 (2d Cir. 1957); Leslie One-Stop in Pennsylvania, Inc. v. Audiofidelity, Inc., 33 F.R.D. 16 (S.D. N.Y.1963). The order to be entered herein will be without prejudice to a subsequent motion for an order increasing or decreasing the amount of the bond for good cause shown.

Insofar as the Entel plaintiffs allege a separate cause of action under state law for breach of fiduciary duty and corporate waste against the directors and officers of Atlas, Atlas is entitled to security for reasonable expenses which it may incur under Section 627 of the New York Business Corporation Law. Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S. Ct. 1221, 93 L.Ed. 1528 (1949). Such

security may be required whether federal jurisdiction is based on diversity of citizenship or, as here, on pendant jurisdiction. It is immaterial that the same expense may be involved in the defense of both the federal and state claims. Phelps v. Burnham, 327 F.2d 812 (2d Cir. 1964); Mintz v. Allen, CCH Fed. Sec.L.Rev., '64–'66 Decisions, ¶ 91,703 (S.D.N.Y.1966); Kane v. Central American Mining & Oil, Inc., 235 F.Supp. 559 (S.D.N.Y.1964). Therefore, plaintiffs in the Entel action will be required to post security pursuant to Section 627 in the amount of $7,500 for the reasonable expenses which may be incurred by Atlas, pending which all proceedings by the plaintiffs in the Entel action on the separately alleged state cause of action will be stayed. The amount of the security may hereafter from time to time be increased or decreased in the discretion of the court upon a showing that it has become inadequate or excessive (New York Business Corporation Law, Section 627).

Defendants' motions for summary judgment dismissing the complaint are granted with respect to the alleged causes of action under the 1934 Act and the 1958 Act, and are denied with respect to the alleged causes of action under the 1940 Act and under state law. Plaintiffs shall post security in the amounts and upon the conditions hereinbefore stated.

Settle orders on notice.

## MEMORANDUM ON MOTION TO REARGUE

Defendants in the above entitled actions, except defendants Atlas Corporation (Atlas) and Northeast Airlines, Inc. (Northeast), move for an order granting them leave to reargue their motion pursuant to Rule 56(b) of the Federal Rules of Civil Procedure for an order dismissing the second amended complaint and granting summary judgment in favor of the moving defendants. Plaintiffs request that if the motion to reargue is granted, the court reconsider its dismissal of plaintiffs' claims under Section 10(b) of the Securities Exchange Act of 1934 (the 1934 Act) and under Section 408 of the Federal Aviation Act of 1958 (the 1958 Act).

Plaintiffs' contentions are set forth in the court's opinion dated January 31, 1967. Briefly stated, plaintiffs sue on behalf of themselves, representatively on behalf of all other Atlas stockholders similarly situated, and derivatively on behalf of Atlas alleging that defendants in connection with the sale by Atlas of its interest in Northeast to Hughes Tool Company (Toolco) failed to disclose to the stockholders of Atlas or to the governmental agencies which approved the transaction that Howard Hughes dominated both Atlas and Toolco, that the sale was not, therefore, negotiated at arms length, that Atlas's interest in Northeast was worth more than the $5,000,000 sales price, and that Atlas, in fact, received less than $5,000,000. Plaintiffs contend that the inadequacy of the consideration received by Atlas and the nondisclosures in connection therewith constituted violations of Sections 19(b) and 14(a) of the 1934 Act, Sections 17(a) and 36 of the Investment Company Act of 1940 (the 1940 Act), and Section 408 of the 1958 Act.

In its prior opinion the court refused to grant summary judgment as to plaintiffs' claims under the 1940 Act, noting that the "1940 Act 'is broadly remedial, and circumscribes the investment company business with laws and regulations to an extent exceptional even in the highly controlled securities field.'" The court then went on to state that:

"Nor are the plaintiffs' rights, if any, barred by the SEC order which exempted the transaction from the provisions of Section 17(a). The order was based solely on the application submitted by Atlas and the only notice to Atlas's stockholders of their right to intervene in the proceeding and request a hearing on the fairness of the transaction was by publication in the Federal Register. Moreover, the doctrines of res judicata and collateral estoppel do not ordinarily apply to decisions of administrative tribunals * * * and to require plaintiffs to

return to the SEC and attempt to reopen the exemption proceeding would be fruitless since the SEC is without power to award the relief sought in this action."

On the motion to reargue, defendants refer for the first time to Section 38(c) of the 1940 Act which provides that, "No provision of this subchapter imposing any liability shall apply to any act done * * * in good faith in conformity with any * * * order of the Commission * * *." Only one case, Hawkins v. Lindsley, CCH Fed. Sec. L.Rep., '57–'61 Decisions, ¶ 90,863 (S.D. N.Y.1958), has held that an exemption order under Section 17(b) precludes an action under Section 17(a), and in its opinion the court did not refer to Section 38(c). Moreover, no question of notice was raised, a hearing was evidently held, and the plaintiff in that action was "not attacking the exemption orders," but was contending that "no exemption was obtained for the 'real' purchasers * * *."

▪▪▪ If, as plaintiffs contend, the sale of Atlas's interest in Northeast to Toolco was tainted with fraud and self-dealing by Hughes and the order of the Commission exempting the transaction from Section 17(a) was fraudulently obtained, it would be paradoxical to hold that after it was obtained the defendants could rely on Section 38(c) on the ground that their acts in conformity with the order of the Commission were done in good faith. Therefore, defendants' motion is denied.

Plaintiffs' request that the court reconsider its dismissal of plaintiffs' claims under Section 408 of the 1958 Act is without merit. As the court stated in its prior opinion, "Section 408 * * * is directed toward the prevention of monopolistic control of air carriers and the protection of the public interest," and, therefore, "[i]n approving the sale of Atlas's interest in Northeast to Toolco, the CAB was not concerned with the fairness of the consideration received by Atlas."

In its decision, the court granted summary judgment to the defendants with respect to plaintiffs' claims based on Section 10(b) of the 1934 Act and Rule 10b-5 promulgated pursuant thereto.

In their Section 10(b) claim, plaintiffs charge that Hughes, who allegedly dominated both Atlas and Toolco, acting for his personal benefit, caused the sale of the Northeast stock held by Atlas to Toolco at a price substantially less than its true value, in breach of Hughes' fiduciary duty to the Atlas stockholders. In its decision, the court held:

"Plaintiffs did not purchase or sell their stock or warrants in Atlas in reliance on representations made in connection with Atlas's sale of its interest in Northeast and plaintiffs do not allege, nor does it appear that they could allege as the basis of a derivative action, that Atlas was deceived in negotiating the sale. Therefore, the complaints fail to state a cause of action under Section 10(b). O'Neill v. Maytag, 339 F.2d 764 (2d Cir.1964); Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir.1952)."

In *Birnbaum,* the plaintiffs, as stockholders of Newport Steel Corporation (Newport), brought a class action on behalf of the stockholders, and a derivative action on behalf of the corporation, arising out of the sale by Feldman, the controlling stockholder of Newport, of his shares in Newport to the Wilport Company (Wilport) at a price of approximately $22 per share, which was twice the then market value of the stock. The sale was allegedly made following merger negotiations between Newport and Follansbee Steel Corporation (Follansbee), which merger would have been highly profitable to the Newport stockholders and which merger was rejected by Feldman, as president of Newport, shortly before his sale of his Newport stock to Wilport. The complaint alleged specific acts of fraud in that the defendant made certain representations to the stockholders of Newport in letters sent to the stockholders at the time of the negotiations with Follansbee, and again after the sale of Feldman's stock. The Court of Appeals agreed with the Dis-

trict Court that Rule 10b–5 is aimed "only at 'a fraud perpetrated upon the purchaser or seller' of securities and as having no relation to breaches of fiduciary duty by corporate insiders resulting in fraud upon those who were not purchasers or sellers." After reviewing the history of Section 10(b) and the express application of Section 16(b) to insiders, the Court concluded that Section 10(b) "was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs, and that Rule X–10B–5 extended protection only to the defrauded purchaser or seller."

This conclusion was reaffirmed by the Court of Appeals in O'Neill v. Maytag, supra, at 768 of 339 F.2d. In *O'Neill*, the plaintiff, a shareholder of National Airlines, brought a derivative action on behalf of National against a number of its directors and officers and against Pan American World Airways. The transaction complained of was an exchange of stock between Pan American and National, alleged to have been at a ratio unfavorable to National and was made to perpetuate the control of National's insiders from the threat of the block of shares held by Pan American. An exchange of stock is a sale or purchase as that term is used in Section 10(b) and Rule 10b–5. See, Section 3(a) (13)–(14) of the 1934 Act. Despite the contrary position taken by the Securities and Exchange Commission (SEC), and after stating that the complaint obviously stated a claim under State law, the Court of Appeals held that, absent deception, no claim was stated under Rule 10b–5. The Court stated, at page 767:

"Between principal and agent and among corporate officers, directors and shareholders, state law has created duties which exist independently of the sale of stock. * * * The question posed by this case is whether it is sufficient for an action under Rule 10b–5 to allege a breach of one of these general fiduciary duties where the breach does not involve deception. We think that it is not: At least where the duty allegedly breached is only the general duty existing among corporate officers, directors and shareholders, no cause of action is stated under Rule 10b–5 unless there is an allegation of facts amounting to deception."

By way of dictum, the Court distinguished cases involving securities brokers, dealers or investment advisers, stating that with respect to them, a violation of their duty may well be the kind of "fraudulent practice usually associated with the sale or purchase of securities." Subject to these exceptions, the Court stated that Rule 10b–5 is not "a mandate to inquire into every allegation of breach of fiduciary duty respecting the issuance or sale of corporate securities."

In the instant case the plaintiffs were neither purchasers nor sellers of securities, nor was any deception practiced on Atlas. Therefore, on the authority of *Birnbaum* and *O'Neill*, the court decided that though the complaint alleged a State cause of action for breach of fiduciary duty, it did not state a cause of action under Rule 10b–5.

Since the court's decision, the Court of Appeals has handed down two decisions reversing this court, which seriously challenge, if not overrule, its decisions in Birnbaum and O'Neill. Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir. 1967); A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967).[1]

In Vine, this court dismissed the plaintiff's cause of action under Section 10 (b) because he had not purchased or sold securities in reliance on the allegedly fraudulent scheme practiced by the defendants. The Court of Appeals reversed on the grounds that others in the class of shareholders of which plaintiff was a member had sold their shares in reliance on the scheme, that their sales had en-

---

1. *Vine* and *Brod* were decided by different panels of the Court of Appeals than decided *Birnbaum* and *O'Neill*, except that Judge Hays, who dissented without opinion in *O'Neill*, joined in the majority opinion in *Vine*.

abled the defendant Beneficial Finance Company to institute a short form merger which constituted a "constructive sale" of plaintiff's securities, and that plaintiff, therefore, had stated a cause of action under Section 10(b). The Court then went on to say that:

"* * * the Commission advances the alternative argument that plaintiff need not even be a selling stockholder to sue under 10b–5, so long as the Rule has been violated and plaintiff's stock lost value as a result. The Commission claims in effect that prior decisions in this circuit, often cited for the rule that only a seller or purchaser may bring a Rule 10b–5 action, have been too broadly read and can be distinguished, see Leech, Transactions in Corporate Control, 104 U.Pa.L.Rev. 725, 832–835 (1956). In view of our disposition of this case, it is unnecessary to deal with this interesting contention."

This point was reasserted in *Brod,* supra, fn. 3. In view of *Vine* and *Brod* and the position taken by the SEC, it may well be that the purchaser-or-seller requirement of *Birnbaum* will not be followed when the question is next presented to the Court of Appeals.

In *Brod* the plaintiff, a broker, alleged that the defendant followed the practice of ordering securities with the fraudulent intent of paying for them only if their value had increased by the settlement date. This court dismissed the complaint on the ground that the type of fraud alleged was not encompassed by

Section 10(b) which was enacted, in general terms, to protect investors from frauds "usually associated with the sale or purchase of securities" and relating to the investment value of the securities sold or purchased. See, Fleischer, "Federal Corporation Law:" An Assessment, 78 Harv.L.Rev. 1146, 1160–67 (1965).

The Court of Appeals reversed, characterizing this court's "interpretation of § 10(b) and Rule 10b–5" as "much too narrow." Relying, "in the main, on the language of the applicable provisions," the Court of Appeals concluded that:

"We believe that § 10(b) and Rule 10b–5 prohibit *all* fraudulent schemes in connection with the purchase or sale of securities, whether the artifices employed involve a garden type variety of fraud, or present a unique form of deception. Novel or atypical methods should not provide immunity from the securities laws."

If an undisclosed scheme to breach State contract law is encompassed by Section 10(b) and Rule 10b–5, then an undisclosed scheme to breach State corporate fiduciary law must also be covered. Although the SEC's argument for this interpretation of Section 10(b) and Rule 10b–5 was rejected in *O'Neill,* it appears to have been adopted in *Brod.*

██ Although this court feels that the extension of Section 10(b) and Rule 10b–5 to non-purchasers-or-sellers and to "*all* fraudulent schemes" would be better left to Congress than to judicial interpretation, it is bound to follow the decisions of this circuit.[2] Defendants' motion to

---

2. The following views expressed by Associate Justice Harlan in a recent address to the Federal Bar Association of New York, New Jersey and Connecticut are pertinent to the foregoing:

"[There is an] increasing tendency to look to the federal courts to set right things which, under our governmental system, should be left for solution elsewhere. This tendency is, of course, a phenomenon of the spirit for change generated by the great social, political and economic upheavals that have followed in the wake of the two world wars. At bottom, it evinces impatience with the slowness of reform when

sought through the political process, and, what to many is more disturbing, skepticism as to whether our historic federal system is any longer adequate to meet the problems confronting modern American society.

* * * * *

"To many this use of the federal judicial process is disquieting, for reasons that cut much deeper than mere disagreement with particular controversial decisions * * *. They wonder whether the current fast pace of constitutional change being effected through the medium of the judiciary is not making lasting inroads into the two great

reargue is denied. Plaintiffs' motion to reargue is granted and, upon reargument, defendants' motion for summary judgment as to plaintiffs' 1934 Act claim under Section 10(b) and Rule 10b–5 is denied.

Settle orders on notice.

principles that underlie our system of government—the dividing lines between federal and state authority, and, within the federal system, the separation of governmental powers among the executive, legislative and judicial branches." [Reprinted in N.Y.Law Journal, May 15, 1967, at p. 4.]