**Charles Wendell COFFEE, Plaintiff,**

v.

**PERMIAN CORPORATION, W. R. Davis, A. L. Bennett, C. R. Herpick, Earl Layman, and Walter K. Boyd, Jr., Defendants.**

**Civ. A. No. 5–642.**

United States District Court
N. D. Texas,
Lubbock Division.

Nov. 26, 1969.

Order on Motion to Reargue
Dec. 9, 1969.

Charles E. Galey, Lubbock, Tex., for plaintiff.

W. B. Browder, Jr., Gene L. Jameson, Midland, Tex., for defendants.

## MEMORANDUM AND ORDER

WOODWARD, District Judge.

Plaintiff, Coffee, brings this action for damages against the Defendants for the violation of the Security Laws of 1934, 15 U.S.C. § 78a et seq. and Rule X–10b–5 of the Securities and Exchange Commission. The fact allegations of Plaintiff's complaint are, briefly, as follows:

A. Plaintiff is a minority stockholder of the J. B. Knight Company, Inc. (Knight Co.).

B. In 1965 the Defendant, Permian Corporation, acquired 50 per cent of the authorized stock of the Knight Co. Shortly thereafter, the Defendant Permian made a dominating loan agreement with the Knight Co. and gained control of its affairs. In 1966, all of the Defendants manipulated the affairs of the Knight Co. and caused Knight Co. to assume payment of improper charges which were the debts of the Defendant, Permian Corporation.

C. The J. B. Knight family originally owned in excess of 40 per cent of the outstanding stock of the Knight Co. It is alleged that in 1966 the Defendants forced this family to sell most of their stock back to the Knight Co. as treasury stock, that the Knight Co. issued its promissory note in payment of such stock, and that the Knight family stock thereby became treasury stock of the Knight Co.

D. The purchase of this treasury stock by the Knight Co. gave the Defendant, Permian Corporation, an 80 per cent interest in the Knight Co.

E. Plaintiff contends that certain financial manipulations by the Defendants, including the liquidation of the assets of the Knight Co., caused damages to him as a minority stockholder. Also, Plaintiff contends that Defendants accomplished their manipulations, at least in part, by using the United States mails

and other instruments of interstate commerce.

The Defendants have filed their motion to dismiss Plaintiff's complaint, contending that the above facts do not give this Court jurisdiction under Section 78j of Title 15 U.S.C. or under Rule 10b–5 of the Securities and Exchange Commission. Section 78j provides in part:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange * * *

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule 10b–5 of the Commission, 17 C.F.R. § 240.10b–5 (1964), provides:

"It shall be unlawful for any person. directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

"(a) To employ any device, scheme, or artifice to defraud,

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

The Defendants, citing Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2nd Cir. 1951), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), argue that no violation of federal law has occurred because the facts which Plaintiff has alleged do not establish that Plaintiff participated in a purchase or sale of any security.

Plaintiff opposes the motion to dismiss and cites the following which he contends would give this Court jurisdiction:

1. When Knight Co. purchased its own stock as treasury stock, Plaintiff's percentage of ownership of outstanding stock in the corporation increased and he thereby became a purchaser.

2. When Defendant commenced the liquidation of the assets of the Knight Co., Plaintiff's shares of stock were, in effect, converted into a claim for cash and Plaintiff became an involuntary seller of securities.

3. If the Court were to determine that Plaintiff was neither a seller nor a purchaser, under the theories set forth above, Plaintiff asserts that he has alleged fraud in connection with the purchase back of the Knight family stock by the corporation and the issuance of corporate notes in payment thereof and that he has incurred damage as a result of such transactions.

The Court has considered the pleadings, the briefs of the parties and oral argument of counsel which was heard on the 13th day of November, 1969. The briefs and oral argument were directed primarily to Plaintiff's second contention and the Court will consider it first.

While Defendants rely on Birnbaum v. Newport Steel Corp., *supra*, to support their motion, Plaintiff urges that the *Birnbaum* case has been significantly eroded by subsequent decisions. In fact, Plaintiff asserts that more recent holdings, in particular Vine v. Beneficial Finance Company, 374 F.2d 627 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967), give substance to his claim that this Court has jurisdiction. In the *Vine* case, which has been recently cited with approval by the Supreme Court in Securities and Ex-

change Commission v. National Securities, Inc., 393 U.S. 453, 468, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), corporation A, which owned 95 per cent of the total outstanding shares of corporation B, merged B into A in accordance with a procedure labeled "short form merger." After the merger, the remaining five per cent stockholders in B had the opportunity of obtaining the fair value of their shares or of continuing to hold certificates of ownership in a non-existent corporation. One of the remaining shareholders instituted action under the Security Laws and the Second Circuit found that he had standing to sue under Rule 10b–5 because his stock, in effect, had been involuntarily converted into a claim for cash and he had consequently become a party to a sale at the time of the merger. In the present case, Plaintiff argues that this very situation has occurred. His rationale is presented in the following manner: that Plaintiff had no options other than to dissent from the corporate action in liquidating and selling the corporate assets under the provisions of the Texas Business Corporation Act, Article 5.11, V.A.T.S., and then to surrender his shares in exchange for fair value under Article 5.12 of the Act; that he was deprived of this right to dissent to the liquidation because no shareholders' meeting as required by Article 5.10 was or has ever been called; and consequently that his only right is to hold his shares until the insiders tell him if any cash or assets are available for distribution to the shareholders. Under these circumstances, Plaintiff urges that a sale similar to the one found in Vine v. Beneficial Finance Co., *supra,* is present in this case.

Although the Court recognizes the holding of the *Vine* decision, the Court is not of the opinion that *Vine* controls the situation in the present case because here, since the officers and directors of the Knight Co. have taken no statutory action to dissolve, liquidate, or merge the company, Plaintiff has no right to demand value for his shares. Plaintiff is unlike the shareholder in *Vine* who had his shares involuntarily converted into a claim for cash by the statutory merger of the corporations. Here, Plaintiff still owns shares in a corporation that continues to operate even though its assets are in the process of being sold. It is not alleged that Knight Co. or any of its officers have followed any of the procedures under the Texas Business Corporation Act, to merge, liquidate or dissolve the Knight Co. The lack of any acts following statutory procedures to liquidate, dissolve or merge the Knight Co. distinguishes this case from *Vine.* However, under state law, Plaintiff is not without remedy. For example, under Article 7.05, a shareholder such as Plaintiff can bring action in a state court to have a receiver appointed for the assets and business of a corporation when it appears that the acts of the directors or those in control are illegal, oppressive or fraudulent. Therefore, although Plaintiff has standing to sue in the state courts, he has failed to establish standing to sue in this Court on the theory that an involuntary conversion of his stock has occurred to make him a seller.

Plaintiff, asserting another argument to establish standing to sue, contends he was an indirect or involuntary purchaser. His percentage of the ownership in the outstanding stock of the Knight Co. increased as a result of the purchase by Knight Co. of the stock of the J. B. Knight family; consequently, he indirectly became a purchaser of securities. In dictum, the Court of the Southern District of New York in Hoover v. Allen, 241 F.Supp. 213 (S.D.N.Y.1965) indicated that such facts do not constitute a purchase or sale. In that case, a corporation bought back some of its outstanding stock and, as a result of the purchase, defendant insiders acquired control. Minority stockholders subsequently instituted a derivative action. A question of standing to sue was raised and the Court said, at page 228:

"Without relying on possible inferences drawn from Ruckle and O'Neill (in which cases injury to the respec-

tive corporations under section 10(b) or the threat thereof was present independent of the fraudulent acquisition of control), this court concludes that control acquired as part of a fraudulent scheme, of itself, is not an injury to the corporation within the meaning of section 10(b) of the 1934 Act upon which a derivative action can be based.

"The injury, if any, from such a scheme would be to the remaining minority shareholders whose power has been diluted through the Company's purchases,—an injury for which these shareholders, under the rule of Birnbaum, supra, and other cases, have no remedy because they are neither purchasers nor sellers."

Applying the above analysis in the present case, the Court must reject Plaintiff's argument that he was a purchaser even though his interest in Knight Co. increased when this company bought back as treasury stock the stock of the Knight family.

Thirdly, Plaintiff contends that even though he may not be a purchaser or seller of securities, either indirectly or directly, he has standing to sue in the United States District Court because his damage resulted from the alleged fraudulent acts and conduct of the Defendants in connection with the purchase of the stock by the company from the Knight family. This, he contends, was an act, practice or course of business by the Defendants which operated as a fraud or deceit upon him, in connection with the purchase or sale of a security, under Rule 10b–5 of the Securities and Exchange Commission.

In support, Plaintiff contends that Birnbaum has either been overruled or eroded to such an extent that it is no longer the controlling law in this field. With this we cannot agree. The question presented is:

"Can a plaintiff, who is neither a purchaser nor a seller of securities, sue corporate insiders for damages when there is a purchase by the corporation of its own shares of stock from a stockholder and the purchase gives the insiders further control over the corporation?"

It should be observed that the selling stockholders (Knight family) have not complained in this case.

Although it is recognized that Vine extends Birnbaum to some extent, i. e., that a plaintiff may be an involuntary seller, and that other decisions such as Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (2d Cir. 1967), have recognized that a plaintiff in an injunction suit need not be a seller or purchaser, only one decision has been found that would support Plaintiff with reference to the above question. In Entel v. Allen, 270 F.Supp. 60 (S.D.N.Y.1967), the District Court interpreted the Vine decision as seriously challenging, if not overruling, the Birnbaum requirement that only a defrauded purchaser or seller had standing to sue under Rule 10b–5. It then proceeded to hold that "shareholders who neither purchase nor sell in the allegedly fraudulent transaction are entitled to damages under Rule 10b–5 when corporate insiders withhold material information in order to gain shareholder approval of a securities transaction that is against the best interest of the corporation." Note, 53 Cornell L.Rev. 684, 693 (1968). However, the holding in Entel appears to be based on the rather questionable assumption that Vine overruled Birnbaum when, in fact, the plaintiff in the Vine case was found to be a seller of securities. Except for the Entel case, this Court has been unable to find a decision allowing a non-purchaser or non-seller to sue under Rule 10b–5 in a damage action.

Birnbaum explicitly requires the standing of seller or purchaser on the part of plaintiff to bring suit for damages under Rule 10b–5 when it states:

"When Congress intended to protect the stockholders of a corporation

against a breach of fiduciary duty by corporate insiders, it left no doubt as to its meaning. Thus Section 16(b) of the Act of 1934, 15 U.S.C.A. § 78p (b), expressly gave the corporate issuer or its stockholders a right of action against corporate insiders using their position to profit in the sale or exchange of corporate securities. The absence of a similar provision in Section 10(b) strengthens the conclusion that the section was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs, and that Rule X–10B–5 extended protection only to the defrauded purchaser or seller." (emphasis ours).

*Vine* did not overrule *Birnbaum*; it merely held that an involuntary seller of stock, in a forced merger, was a seller. It accepted the requirement that, to have standing, the plaintiff must still be a seller. In fact, in a comment in the Cornell Law Review, Note, 53 Cornell L.Rev. 684 (1968), it was indicated that the Securities and Exchange Commission, in an *amicus curiae* brief submitted in *Vine,* urged that the Court adopt the position that the plaintiff need not be a seller or purchaser. This the Court refused to do in *Vine,* but instead took the narrower view that the plaintiff was a seller, although not a voluntary seller. This requirement has also been followed in Erling v. Powell, 298 F.Supp. 1154 (S.D.S.Dakota 1969). Moreover, *Birnbaum* has been recognized and approved in the Fifth Circuit in Hooper v. Mountain States Securities Corporation, 282 F.2d 195 (5th Cir.), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961), although the precise question in the present case was not before the Fifth Circuit in *Hooper.*

The expansion of the definition of seller, as in *Vine,* or the extension of Rule 10b–5 cases in requests for injunctive relief to non-sellers or non-purchasers as in Dasho v. Susquehanna Corp., 380 F.2d 262 (7th Cir.), cert. denied, Bard v. Dasho, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 470 (1967), or even the holding in Entel v. Allen, 270 F.Supp. 60 (S.D.N.Y.1967), does not lead to the conclusion that *Birnbaum* has been overruled.

It would seem that, if the Congress desired to eradicate the *Birnbaum* requirement, it would pass the necessary legislation removing the requirement that a plaintiff must be a seller or purchaser to have standing under a Rule 10b–5 case or a Section 78j case for damages.

Following the decisions in this area, it is the opinion of this Court that Defendants' motion to dismiss should be granted as Plaintiff has no standing to file this action under Rule 10b–5 or under Section 78j since he is not a seller or purchaser of securities.

It is accordingly ordered that Defendants' motion is granted and said cause of action is hereby dismissed and all costs are taxed as against the Plaintiff.

The Clerk will furnish a copy of this order to all attorneys.

### ORDER

On this date the Court took under consideration the Plaintiff's Motion to Reargue, Alter and Vacate Judgment filed herein on December 3, 1969. The two grounds asserted by Plaintiff in support of his motion will be examined separately by the Court:

1. Plaintiff asserts that the Court made an erroneous finding to the effect that the corporation "continues to operate," which is contrary to the allegations of the complaint. While it it true that, in determining the Defendants' Motion to Dismiss, the Court should consider only the allegations as contained in the complaint, it

is immaterial whether the corporation is "operating" or not. Plaintiff, in order to have standing to sue under Rule 10b–5 must be either a seller or purchaser. In order to be a seller under Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967), it was the holding of this Court that the merger, dissolution or liquidation must have been done or effected by statutory procedures. This was not done in this case, and in the absence of statutory procedures for merging, dissolving or liquidating the corporation, Plaintiff does not become a seller under *Vine*.

2. Plaintiff in his motion further argues that the Defendants, by failing to follow the statutory law in liquidating the corporation, have removed themselves from the sanctions of Rule 10b–5, and that such a scheme is not permissible under the holding of Hooper v. Mountain States Securities Corp., 282 F.2d 195 (5th Cir.), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961). In *Hooper*, however, the Plaintiff was a trustee for the corporation which actually sold the shares. In the instant case, the Knight Co., who purchased shares of stock from the Knight family, is not a party to this suit either directly, through a trustee or by any stockholder derivative action. Moreover, the scheme executed in *Hooper* in no way resembles the fact situation alleged in this case.

Therefore according to Birnbaum v. Newport Steel Corp., 193 F.2d 461, the Plaintiff must be a purchaser or a seller in order to have standing to sue in this case, and the Plaintiff in this case is neither a purchaser nor a seller under either the holdings of *Vine* or *Hooper*. Plaintiff's motion is thus denied.

The Clerk will furnish a copy of this order to all attorneys.