**Charles A. NANFITO, Administrator of the Estate of Alice C. Major, Plaintiff,**

**v.**

**TEKSEED HYBRID COMPANY, a Nebraska Corporation, et al., Defendants.**

**Civ. No. 03507.**

United States District Court, D. Nebraska.

Feb. 15, 1972.

J. Patrick Green (Eisenstatt, Higgins, Kinnamon & Green), and Charles Nanfito (Nanfito & Nanfito), Omaha, Neb., for plaintiff.

Waldine H. Olson (Schmid, Ford, Mooney, Frederick & Caporale), Omaha, Neb., for defendants.

## MEMORANDUM AND ORDER

DIER, District Judge.

This matter comes before the Court on plaintiff's motion for partial summary judgment against all individual defendants, Filing No. 52, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The plaintiff in this case is the Administrator of the Estate of Alice C. Major. The defendant Tekseed Hybrid Company is a Nebraska corporation and the successor by merger of Tek Annex Company, which was also a Nebraska corporation. The merger of the two aforesaid companies took place on July 1, 1968. The defendants Raymond A. Cram, Gordon Cram, William Breckenridge, James Cornish, and Charles W. Gammel, were all stockholders, and some or all of them were officers and directors of Tek Annex Company, and plaintiff alleges that they together controlled that Company. Each and all of the individual defendants were also stockholders in Tekseed Hybrid Company prior to its merger with Tek Annex Company, and some or all of them were officers and directors of that Company, and plaintiff alleges that they together controlled that Company. Both Tekseed Hybrid Company and Tek Annex were denominated Subchapter S corporations for income tax purposes.

Prior to July 31, 1967, Alice C. Major owned one hundred shares of the outstanding five hundred shares of the Tek Annex Company, and five hundred shares of the outstanding twenty-five

hundred shares of the capital stock of Tekseed Hybrid Company. On July 1, 1968, as a result of a stock dividend, Alice C. Major owned thirty-five hundred of the seventeen thousand five hundred shares of stock of Tekseed Hybrid Company.

It is not disputed that at the time of the merger of Tekseed Hybrid Company and Tek Annex Company Tek Annex had five stockholders: William Breckenridge—one hundred shares; Charles W. Gammel—one hundred shares; James Cornish—one hundred shares; Raymond Cram—fifty shares; Gordon Cram—fifty shares. Tekseed Hybrid Company had the following stockholders: William Breckenridge—five hundred shares; James Cornish—five hundred shares; Gordon Cram—two hundred fifty shares; Raymond Cram—two hundred fifty shares; Charles W. Gammel—five hundred shares; and Alice C. Major—five hundred shares.

At the time of the merger these same persons made up the officers and the board of directors of both Tekseed Hybrid Company and Tek Annex. Defendants James Cornish, Gordon Cram, and Raymond Cram, were officers of both companies. Defendants William Breckenridge, James Cornish, Gordon Cram, Raymond Cram and Charles W. Gammel, constituted the boards of directors of both corporations.

It is not disputed that at the time of the merger Tek Annex was a dormant corporation. It had ceased to do business prior to the merger, and its assets had been liquidated. Tek Annex had only minimal income in the years between its liquidation and the merger.

Neither is it disputed that Tekseed Hybrid Company was a going concern producing and selling hybrid seed corn.

As of June 30, 1968, the book value per share of Tek Annex stock was $160.02, while the book value of Tekseed Hybrid Company stock was $73.22 per share. It is alleged that these book values were the only factors considered by the officers and directors of the two corporations in fixing the exchange values of the stock of the two corporations for purposes of the merger. It is alleged that absolutely no consideration was given to the fact that Tekseed Hybrid Company had a history of earnings, while Tek Annex Company was merely a dormant corporation.

It is the theory of the plaintiff on this motion that the defendant officers and directors and controlling stockholders of the two corporations were under a fiduciary duty to act in the best interests of Alice C. Major, and that this duty was especially high since said defendants had a financial interest in the transaction. Plaintiff contends that the individual defendants were in effect selling their stock in Tek Annex to the Tekseed Hybrid Company in return for its stock. And that they were, therefore, under a duty to exercise the highest rectitude.

It is plaintiff's position that the individual defendants were under a duty to consider other factors besides the book value of the stock in setting the exchange rate for the stock in the merger, and that their failure to do so constituted a breach of their fiduciary duty. The plaintiff further contends that the additional failure of the individual defendants to notify Alice C. Major of these other factors which they should have considered constituted a violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. 78j, Subsection (b), which provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange * * * (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appro-

priate in the public interest or for the protection of investors."

Pursuant to the authority granted by the aforesaid section, the Securities Exchange Commission has adopted Rule 10B–5, which provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, (1) To employ any device, scheme or artifice to defraud, (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

■ Section 10(b) and Rule 10B–5 adopted by the S.E.C., prohibit fraudulent securities transactions, and a violation of this Section or Rule has been held by the courts to give a defrauded party to a securities transaction a private civil cause of action. See Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa.1946). The basic elements of such a cause of action under 10(b) are: (1) the purchase or sale of a security, (2) an interstate contract, (3) a deception in connection with the purchase or sale, usually in the form of a material misrepresentation or omission, (4) reliance upon the deception, and (5) injury to the purchaser or seller as a result of this reliance.

Currently, controversies exist concerning: (a) whether the plaintiff must be a "purchaser or seller" of securities in order to maintain a Section 10(b) cause of action, and (b) whether 10(b) applies to breaches of state corporate fiduciary duty. The resolution of these controversies has particular significance in Section 10(b) actions involving acquisition.

In discussing the first controversy, it must be understood that both Section 10(b) and Rule 10B–5 are stated in terms of "purchases or sales" of securities. The necessity of being a purchaser or seller had been considered as settled by the courts and practitioners for years, based upon numerous decisions. See Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2 Cir. 1952). The S.E.C., however, has advanced the argument that the plaintiff in a Section 10(b) suit need not himself be a purchaser or seller of securities as long as Section 10(b) has been violated and the plaintiff's stock has lost value. See Vine v. Beneficial Finance Co., 374 F.2d 627 (2 Cir. 1967). While not adopting the S.E.C. approach, the Court, in Vine allowed a Section 10(b) suit to be maintained by plaintiff who was neither a purchaser or seller of securities. The Vine case involved the acquisition by a corporation of ninety-five per cent of the shares of stock of another corporation through a series of purchases and a tender offer which were then followed by a short form merger. The plaintiff was a minority shareholder in the corporation which had disappeared as a result of the merger, and who still retained his stock, not having surrendered it pursuant to the short form merger or tender offer. The Court in allowing the Section 10(b) action deemed plaintiff a seller of securities even though there had technically not been a sale. Since the plaintiff's only alternatives after the short form merger were either to accept the surviving corporation's cash offer for his shares or to receive cash for his shares through his right of appraisal, or to keep certificates in a non-existent corporation, the requirement of an actual sale would be a needless formality.

The holding provided the basis for an extension of Section 10(b) to persons who are not purchasers or sellers of securities in Entel v. Allen, 270 F.Supp. 60 (S.D.N.Y.1967). The latter case involved the sale by the Atlas Corporation of its holdings of Northeastern Air

Lines to Hughes Tool Company. Howard Hughes dominated both Atlas Corporation and Hughes Tool Company. The plaintiffs, who were shareholders in Atlas Corporation, were neither purchasers or sellers of securities. They based their claim under Section 10(b) on the fact that Howard Hughes, acting for his own benefit, caused the sale of the Northeastern stock at a price below its true value in breach of his fiduciary duty to Atlas Corporation and its shareholders. In deciding the plaintiffs had stated a good Section 10(b) action, the Court faced and answered affirmatively two issues: (1) Can the plaintiffs maintain such an action without being purchasers or sellers of securities, and (2) Does Section 10(b) apply to breaches of state corporation fiduciary duty?

In resolving the first issue, based on the holding in the *Vine* case, the Court in *Entel* admitted that it was extending Section 10(b) in a manner which would be better left to Congress than to judicial interpretation. The Court justified the extension, however, on the grounds that it was bound to follow the decisions of its Circuit. The validity of the extension of Section 10(b) to persons who have not purchased or sold securities, therefore, depends upon the validity of the Court's interpretation of the *Vine* case.

The second issue in *Entel*, which involves the second controversy presented previously, has been before the Courts several times; and the Courts have refused to apply Section 10(b) to breaches of state corporate fiduciary duties. See Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2 Cir. 1952); O'Neill v. Maytag, 339 F.2d 764 (2 Cir. 1964).

■ In any event, it is now well settled that an exchange of securities pursuant to a merger or consolidation involves a "purchase" and "sale". Simon v. New Haven Board & Carton Co., 250 F.Supp. 297 (D.Conn.1966); Dasho v. Susquehanna Corporation, 380 F.2d 262 (7 Cir., 1967).

■ The holding of the latter two cases is justified by the definition of "sale" found in Section 3(a) (14) of the 1934 Act and the refusal of the S.E.C. to extend the "no sale" provisions of Rule 133 of the Securities Act of 1933, beyond the registration provisions of Section 5 of that Act. The plaintiff holder of the disappearing corporation is in the same position as the plaintiff in the *Vine* case, since he has no reasonable alternative but to "sell" his stock. Therefore, a shareholder in the disappearing corporation should have a standing to sue under Section 10(b) (5) even if he has not yet sold or exchanged his shares pursuant to the merger.

■ The shareholders of the *surviving* corporation, however, are not sellers of securities, unless a sale is made pursuant to dissenters' rights. Here the shareholders are not faced with the lack of alternatives required by the *Vine* case since they may keep their stock in the surviving corporation. Therefore, a suing shareholder can only justify his standing to sue under Section 10(b) based upon the rationale of the *Entel* case and the S.E.C.'s position as presented in the *Vine* case, that the plaintiff need not sell or purchase a security if Section 10(b) is violated and the plaintiff's shares are decreased in value. A decrease in value of plaintiff's shares would normally result from a material misrepresentation or omission, since there would be a dilution in his interest in the surviving corporation from the issuance of shares for less than full value. The *Entel* case is best justified when applied to the shareholders of the surviving corporation, since the shareholders of the disappearing corporation may seek relief under Section 10(b). The *Entel* decision has the effect of giving shareholders of both the disappearing and the surviving corporations in a merger the same remedies under the 1934 Act. When one looks to the purposes and the spirit of the Securities Act, the rationale of the *Entel* case becomes compelling.

■ This Court would, therefore, find that the plaintiff's allegations in

this case are at least cognizable under Section 10(b).

The plaintiff in this case seeks only to establish the question of liability on this motion for summary judgment. The Court must, therefore, determine what facts must be established in order to establish liability under Section 10(b) and Rule 10B-5.

It is the plaintiff's position that it is not necessary to establish an intent to defraud in order to predicate liability under the aforesaid Section and Rule. Plaintiff contends that the Eighth Circuit case of Myzel v. Fields, 386 F.2d 718 (8 Cir. 1967), requires the plaintiff in a Section 10(b) case to establish only that the defendants were negligent in failing to disclose to the plaintiff information which would have been helpful in making an intelligent investment decision. The Eighth Circuit in the *Myzel* opinion did not exactly say that it was applying a negligence standard in that Section 10B-5 case. However, the Court did state as follows:

> "Proof of 'scienter,' i. e., knowledge of the falseness of the impression produced by the statements or omissions made, is not required under Section 10(b) of the Act."

By removing the scienter requirement from Section 10(b), it is arguable that the Eighth Circuit in effect did establish a negligence standard for Section 10(b) cases. This is, of course, plaintiff's position.

If it can be said that a negligence standard is to be applied in Section 10(b) cases, then the test to be applied is the well-known "reasonable man" test. In other words, the defendants herein, as officers and members of the board of directors of the corporations in question were required to exercise due care in performing their duties for said corporations. If they failed to exercise that degree of care which the ordinary, reasonable and prudent man would have exercised under the same or similar circumstances, then they were negligent in the exercise of said duties. This, of course, is a fact question which is normally decided by the trier of fact following a trial.

Rule 56 of the Federal Rules of Civil Procedure permits any party to a civil action to move for a summary judgment upon a claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. Though the procedure is freely available in all types of litigation, it is obvious that some kinds of cases lend themselves more readily to summary adjudication than do others. Thus, summary judgment will not usually be as feasible in negligence cases, where the standard of the reasonable man must be applied to conflicting testimony, as it is in other types of litigation, but there have been a few cases in which summary judgment has been granted in negligence cases. E. g., Marsden v. Patane, 380 F.2d 489 (5 Cir. 1967); Green v. Illinois Central R. Co., 316 F.2d 728 (5 Cir. 1963). See also Volume 3, Barron and Holtzoff (Wright Edition), Section 1232.1.

From the allegations of plaintiff's complaint, it is by no means clear that he chooses to proceed upon a negligence theory. If he does proceed on such a theory, the Court would prefer that he amend his complaint accordingly, and would grant a motion to amend if made. In such an event, the Court would also permit the defendants to amend their answer so as to state any additional defenses they might have to a negligence action, i. e., contributory negligence, assumption of risk, etc.

In any event, before this Court could rule as a matter of law that plaintiff is entitled to a summary judgment on the issue of liability, the Court would have to be able to say that reasonable minds could not differ on the question of whether the individual defendants in this case have breached their duty of due care. This Court simply cannot reach such a conclusion at this point.

Furthermore, if it can still be said that intent is an element which must be

proven by the plaintiff in Section 10(b) cases, then it is clear that summary judgment would be improper in the present case because there is most emphatically a dispute as to whether or not there was any intent upon the part of the individual defendants herein to defraud Alice C. Major.

In this regard, the Court notes that it appears that Mrs. Major's husband, who predeceased her, had been a founder and officer of both Tekseed Hybrid Company and Tek Annex. Mrs. Major, prior to the merger, owned stock in Tek Annex but decided to divest herself of such stock some eighteen months before the merger. It is, of course, quite obvious that, had she retained those shares, she would have continued on an equal footing with the individual defendants herein *vis-a-vis* the impact of the merger on the stock values.

█ Thus, regardless of whether a negligence standard or the harder-to-prove fraudulent intent standard is to be applied in this type of case, summary judgment would be improper since more facts must be adduced before a decision can be made. Accordingly,

It is ordered that plaintiff's motion for summary judgment, Filing No. 52, should be and is hereby overruled.