**BIRNBAUM et al. v. NEWPORT STEEL CORP. et al.**

No. 107, Docket 22172.

United States Court of Appeals Second Circuit.

Argued Dec. 6, 1951.

Decided Jan. 10, 1952.

Nathan B. Kogan, New York City, for plaintiffs-appellants; Irving Constant, New York City, counsel.

Cahill, Gordon, Zachry & Reindel, New York City, for defendant-appellee Newport Steel Corp.; Frederick P. Warne, New York City, counsel.

Milbank, Tweed, Hope & Hadley, New York City, for defendant-appellee Wilport Co.; A. Donald MacKinnon and Eugene H. Nickerson, New York City, counsel.

Sullivan & Cromwell, New York City, for defendant-appellee, C. Russell Feldmann; Arthur H. Dean, Howard T. Milman and Henry N. Ess, III, New York City, counsel.

Before SWAN, Chief Judge, and L. HAND and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The appellants are stockholders of the Newport Steel Corporation who brought suit on behalf of that corporation and as the representatives of all similarly situated stockholders. The complaint alleges a violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j (b), and Rule X–10B–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 (1949), in that use of the United States mails was resorted to by the several defendants in order to defraud the stockholders of Newport and the Corporation in the sale of certain stock owned by the defendant Feldmann to the defendant Wilport Company. The defendants, Newport Steel Corporation, Wilport Company, and C. Russell Feldmann, moved in the court below to dismiss the complaint for failure to state a cause of action. That court granted the motion and directed judgment accordingly. Jurisdiction of the district court was invoked solely under Section 27 of the Securities Exchange Act, 15 U.S.C.A. §§ 78aa.

The allegations of the complaint pertinent for mention may be summarized as follows: Prior to the sale in controversy, the Newport Steel Corporation manufactured steel which it sold to manufacturers of finished steel products. The defendant Feldmann owned approximately forty per cent of the common stock of Newport, which was sufficient for voting control, and was its president and chairman of its board of directors; the remaining stock of Newport was publicly held and scattered among thousands of small investors. The defendants Stamm, Aheim, Rohr, Lorenzen, Sheaffer and Ballantyne were directors of Newport from June to August 1950 and were controlled by Feldmann. During this period Follansbee Steel Corporation and Newport were negotiating for a merger of the two corporations, which merger, on the terms offered by Follansbee, would have been highly profitable to all the stockholders of Newport. However, in August of 1950, Feldmann, acting in his official capacity as president of Newport, rejected the Follansbee offer, and on August 31, 1950, sold his stock to the defendant Wilport Company at a price of approximately $22. per share which was twice the then market value of the stock. The Wilport Company had been formed by ten manufacturers, each of whom used substantial quantities of steel in its business, for the purpose of purchasing control of Newport and using its steel productive capacity as a "captive" source of supply during the market shortage of steel. That accounted for the premium price paid by Wilport to Feldmann for the latter's stock since the purchase gave Wilport voting control. Immediately following the sale, Feldmann and the other directors of Newport resigned and the defendants Gibson, Mericka, Mitchell, Cobourn, and Paxton, all of whom were officers and directors of Wilport, took their places. In addition to several allegations that Feldmann and the other defendants violated their fiduciary obligations to Newport and its stockholders, the complaint alleged specific acts of fraud in that the defendants made certain misrepresentations to the stockholders of Newport in letters sent to the stockholders at the time of the negotiations with Follansbee and again after the sale of Feldmann's stock. Thus, in a letter to the Newport stockholders on August 3, 1950, Feldmann stated that the negotiations with Follansbee had been suspended because of the "uncertain international situation." And in a letter dated September 14, 1950, Gibson, the new president of Newport, reported the sale of Feldmann's stock but failed to state the selling price or that Newport was to become a "captive" subsidiary of Wilport.

It is claimed by the appellants that these misrepresentations operated as a fraud upon the stockholders of Newport in connection with the sale of Feldmann's stock, and that SEC Rule X–10B–5 was thereby violated. The district court, however,

viewed the Rule in question as aimed only at "a fraud perpetrated upon the purchaser or seller" of securities and as having no relation to breaches of fiduciary duty by corporate insiders resulting in fraud upon those who were not purchasers or sellers. We are in accord with the district court's interpretation of the Rule.

Section 10(b) of the Securities Exchange Act does not by its terms make unlawful any conduct or activity but confers rule-making power upon the SEC to condemn deceptive practices in the sale or purchase of securities. Rule X–10B–5, which was promulgated by the SEC pursuant to this authorization, provides as follows:

"*Employment of manipulative and deceptive devices by any purchaser of a security.* It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

"(a) To employ any device, scheme, or artifice to defraud,

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

The appellants contend that the applicability of the rule is not limited to the actual purchasers or sellers of securities, but that the general proscription of fraud "upon any person" includes and supplements the common law liability of those who abuse the trust of their corporate positions. They contend that this construction is further supported by the use of the words "in connection with" the purchase or sale of securities; for, if the intent had been to deal with just the purchase or sale of securities, the words "in connection with" are superfluous and would not have been added.

While the Rule may have been somewhat loosely drawn its meaning and scope are not difficult to ascertain when reference is had to the scheme of SEC Regulation and the purpose underlying the adoption of X–10B–5. Prior to its adoption the only prohibitions against fraud in the sale or purchase of securities were contained in Section 17(a) of the 1933 Act, 15 U.S.C.A. § 77q(a), and § 15(c) of the 1934 Act, 15 U.S.C.A. § 78o(c). Section 17(a) of the 1933 Act only made it unlawful to defraud or deceive *purchasers* of securities, and Section 15(c) of the 1934 Act dealt only with fraudulent practices by security brokers or dealers in over-the-counter markets. No prohibition existed against fraud on a seller of securities by the purchaser if the latter was not a broker or a dealer. Consequently, on May 21, 1942 the SEC adopted Rule X–10B–5 to close this " * * * loophole in the protections against fraud administered by the Commission by prohibiting individuals or companies from buying securities if they engage in fraud in their purchase." SEC Release No. 3230, May 21, 1942. See Note, 59 Harv.L.Rev. 769, 770; Fischman v. Raytheon Mfg. Co., 2 Cir., 188 F.2d 783, 787, n. 2. The SEC's press release, above quoted, which announced the Commission's adoption of Rule X–10B–5, shows that the Commission was attempting only to make the same prohibitions contained in Section 17(a) of the 1933 Act applicable to purchasers as well as to sellers. That such was the only purpose of Rule X–10B–5 is made abundantly clear when the language of the Rule is compared with the language of Section 17(a); the Commission simply copied Section 17(a), adding the words "any person" in place of "the purchaser" and a final clause "in connection with the purchase or sale of any security."

But the appellants argue that such an interpretation of the Rule is too narrow to carry out the broad purpose of the Act to protect investors "from exploitation by corporate insiders." See Hearings before Senate Comm. on Banking and Currency on S. Res. 84, 56 and 97, 73d Cong., 1st Sess., pp. 6456–6. We do not doubt that Congress was at least partially motivated

by such a purpose in enacting the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq. However, the precise question here is whether Section 10(b) of that Act and the Commission's Rule X–10B–5 were the means chosen to further that end, and we are of the opinion that the legislative "history" and "purpose" quoted by appellants are not persuasive that they were. When Congress intended to protect the stockholders of a corporation against a breach of fiduciary duty by corporate insiders, it left no doubt as to its meaning. Thus Section 16(b) of the Act of 1934, 15 U.S.C.A. § 78p(b), expressly gave the corporate issuer or its stockholders a right of action against corporate insiders using their position to profit in the sale or exchange of corporate securities. The absence of a similar provision in Section 10(b) strengthens the conclusion that that section was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs, and that Rule X–10B–5 extended protection only to the defrauded purchaser or seller. Since the complaint failed to allege that any of the plaintiffs fell within either class, the judgment of the district court was correct and is accordingly affirmed.