Robert J. O'NEILL, Plaintiff-Appellant,

v.

Lewis B. MAYTAG, Jr., Dudley Swim, Pan American World Airways, Inc., G. T. Baker, A. G. McNeese, Jr., Alton Ochsner, David Packard, G. Robert Truex, Jr., Albert C. Wedemeyer, G. R. Woody, and National Airlines, Incorporated, Defendants-Appellees.

No. 125, Docket 29008.

United States Court of Appeals
Second Circuit.

Argued Oct. 30, 1964.

Decided Dec. 29, 1964.

Hays, Circuit Judge, dissented.

Stanley L. Kaufman, New York City, (Shephard S. Miller and Kaufman, Taylor & Kimmel, New York City, on the brief), for plaintiff-appellant.

William Piel, Jr., New York City (David S. Henkel, John E. Donnelly and Sullivan & Cromwell, New York City on the brief), for defendants-appellees.

Philip A. Loomis, Jr., Gen. Counsel, David Ferber, Sol., John A. Dudley, Sp. Counsel, Michael Joseph, Atty., Securities and Exchange Commission, Washington, D. C., for Securities and Exchange Commission, amicus curiæ.

Before LUMBARD, Chief Judge, and HAYS and MARSHALL, Circuit Judges.

LUMBARD, Chief Judge:

This appeal presents questions of the existence and scope of private remedies under federal law for alleged violation of the provisions of two federal regulatory statutes: § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (b) (1958), and § 409(b) of the Federal Aviation Act, 49 U.S.C. § 1379(b). Plaintiff, a shareholder of National Airlines, brought a derivative action in the District Court for the Southern District of New York on behalf of National against a number of its directors and officers and against Pan American World Airways, Inc. He alleged violation of both statutes and of the common law duty of the officers and directors.[1] Jurisdiction for the three theories is based respectively on § 27 of the Securities Exchange Act, 15 U.S.C. § 78aa; the general provision for federal question jurisdiction, 28 U.S.C. § 1331; and on the principle of pendent jurisdiction.

On motions by eight of the nine individual defendants, Judge McLean held that the complaint failed to state a cause of action under either statutory provision and that there was therefore no subject matter jurisdiction with respect to them.[2] Accordingly, he held that the court also lacked jurisdiction over the state law claim against them. We agree that no cause of action under § 10(b) or § 409(b) is stated against these defendants, and we affirm the judgment of the district court.[3]

The transaction complained of under each theory is an exchange of stock between Pan American and National, which is alleged to have been at a ratio unfavorable to National. In 1958 National issued 400,000 shares of its common stock to a trustee for the benefit of Pan American; Pan American in return issued 400,000 of its own shares to a trustee for the benefit of National. This cross-ownership was found by the Civil Aeronautics Board not to be in the public interest, and the Board ordered the companies either to sell or to re-exchange the stock. 31 C.A.B. 198 (1960).

In compliance with the CAB directive, there was an initial exchange of 46,400 shares at a one-to-one ratio early in 1963 and then, later in the same year, a second exchange in which National exchanged 353,600 shares of Pan American for 390,000 shares of National.[4]

1. Plaintiff also alleged that defendant Lewis B. Magtag violated § 16(b) of the Securities Exchange Act by engaging in short-swing trading in National stock. This portion of the complaint was not dismissed and is not involved in this appeal.

2. Pan American appears not to have moved for dismissal. The remaining individual defendant, G. T. Baker, did move for dismissal but died before the motion was decided. Judge McLean held that his attorney's authority was thereby revoked, and his motion was deemed withdrawn. Since Judge McLean found that there was no just reason for delay and entered judgment in favor of the appellees with respect to the § 10(b) claim, we have jurisdiction to hear this appeal. Federal Rule of Civil Procedure 54(b).

3. Since the result in this case is not directly required by precedents of this court or of the Supreme Court, the complaint cannot be considered frivolous, and the proper disposition was to dismiss for failure to state a claim rather than for lack of subject matter jurisdiction. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Nothing turns on that distinction in the instant case, however. Dismissal of the pendent state law claim was nevertheless proper where the federal claim could be dismissed on a preliminary motion. See Note, 77 Harv. L.Rev. 285, 289 (1963). Of course, if the district court had in fact lacked subject matter jurisdiction, it should have dismissed the complaint as to Pan American and Baker on its own motion if the lack of jurisdiction also appeared with respect to the claims against them. Compare Rules 12(h) (1) and 12(h) (2) of the Federal Rules of Civil Procedure.

4. Because of dividends by National, the second exchange apparently still left some 27,000 shares of National stock not re-exchanged.

Plaintiff concedes that the exchange of the 46,400 shares was fair in view of the then prevailing market values. But he alleges that 353,600 shares of Pan American given up by National in the second exchange were then worth $12,906,400 while the 390,000 shares of its own stock which it received in return were worth only $11,115,000, the value in each instance being based on New York Stock Exchange quotations. In plaintiff's view, the individual defendants caused National to pay this premium because they wished to eliminate the threat which the block of shares held by Pan American, approximately 21 per cent of the outstanding shares, posed to their control of National; the defendants in effect used approximately $1,800,000 of National's assets to purchase a more favorable control position for themselves.

## I. Section 10(b) and Rule 10b–5

■■ The allegations obviously state a claim under state law. But, there being no diversity, this state law claim is of no value to plaintiff in a federal district court unless there is also a parallel federal claim of sufficient plausibility at least to survive the opening round of pleadings and motions. Plaintiff's first theory under federal law is that the second exchange of stock violated § 10(b) of the Securities Exchange Act and, more particularly, Rule 10b-5 promulgated thereunder. 17 C.F.R. § 240.-10b–5.

Section 10(b) of the Act provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility or any national securities exchange—"

\*　　\*　　\*　　\*　　\*

"(b) to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule 10b–5 expands on the statutory language:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or,

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

in connection with the purchase or sale of any security."

There can be no serious claim of deceit, withheld information or misstatement of material fact in this case. Decision thus depends on whether the statute and rule impose duties beyond that of honest disclosure.

■■ Between principal and agent and among corporate officers, directors and shareholders, state law has created duties which exist independently of the sale of stock. While the essence of these duties in some circumstances is honest disclosure, the allegations in the instant case are typical of situations in which deception may be immaterial to a breach of duties imposed under common law principles. The question posed by this case is whether it is sufficient for an action under Rule 10b–5 to allege a breach of one of these general fiduciary duties where the breach does not involve deception. We think that it is not: At least where the duty allegedly breached is only the general duty existing among

corporate officers, directors and shareholders, no cause of action is stated under Rule 10b–5 unless there is an allegation of facts amounting to deception.

Our conclusion follows from our view of the purpose of § 10(b): "[T]hat section was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs." Birnbaum v. Newport Steel Corp., 193 F.2d 461, 464 (2 Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). There may be difficulties in drawing this line where, as is alleged here, securities transactions are part of an internal struggle for corporate control. But these difficulties do not justify our treating the section, or the rule, as a mandate to inquire into every allegation of breach of fiduciary duty respecting the issuance or sale of corporate securities.

We have reached this conclusion despite the contrary position taken by the Securities and Exchange Commission in this case. The Commission has urged that a claim under Rule 10b–5 is stated by allegations that a corporation's "controlling directors caused it to acquire a large block of its own stock at an excessive price for the purpose of removing the threat to the directors' control represented by the stock." Brief of the Securities and Exchange Commission. The Commission's view may be supported to some extent by the broad dictum in McClure v. Borne Chemical Co., 292 F. 2d 824 (3 Cir.), cert. denied, 368 U.S. 939, 82 S.Ct. 382, 7 L.Ed.2d 339 (1961), although the posture of the case as it came to the Third Circuit—an appeal from an order refusing to require the plaintiff to post security—meant that the question of the scope of Rule 10b–5

was not directly involved.[5] If such is the import of McClure, however, it seems to stand alone among judicial decisions; a reading of the facts of the cases cited as support by the plaintiff and the Commission reveals that in each, with the possible exception of McClure, the element of deception clearly was present.

There is, of course, no reason why the acts of an agent or corporate officer may not violate both his common law duty and the duty imposed by Rule 10b–5. In Ruckle v. Roto American Corp., 339 F. 2d 24 (2 Cir. 1964), the plaintiff alleged that the defendants, who comprised a majority of the board of directors, secured the board's approval of issuance of securities at an arbitrary value by withholding the most recent financial statements of the corporation. We held that the district court erred in dismissing the complaint; there was a clear allegation of deception in connection with the sale of securities, and the fact that the alleged deception occurred within the corporate structure did not by itself avoid liability under Rule 10b–5.

In addition, deception may take the form of nonverbal acts: In Cochran v. Channing Corp., 211 F.Supp. 239 (S.D. N.Y.1962), it consisted of reducing dividends in order to drive down the price of the corporation's stock. And it need not be deception in any restricted common law sense; one of the central purposes of federal securities legislation would otherwise be seriously vitiated. But, subject to the qualification noted immediately below, there must be allegation of facts amounting to deception in one form or another; conclusory allegations of deception or fraud will not suffice.

We do not now consider the situation in which the fiduciary duty allegedly breached has been created with par-

5. Whether deception was alleged cannot be determined from the court's brief statement of the facts. There is no indication that the defendants had challenged the sufficiency of the complaint— they moved to require security for costs and did not file an answer—and such a challenge would not have been relevant to the appeal in any event. No security was required, in the Third Circuit's view, if the claim arose under the Securities Exchange Act, and it would do so unless it was so frivolous as to be subject to dismissal under Rule 12(b) (1).

ticular reference to the purchase or sale of securities. Violation of the duty owed by a securities broker or dealer or by an investment adviser, even though not involving deception, may well be the kind of "fraudulent practice usually associated with the sale or purchase of securities." While brokers, dealers and investment advisers are subject to detailed regulation under other provisions of federal securities law, we do not wish to foreclose the possibility that a suit might also be maintained under Rule 10b–5 or to hold at this time that an allegation of deception would be essential to such an action.

## II. Section 409(b)

Plaintiff's second federal theory is that the transaction violated § 409(b) of the Federal Aviation Act, 49 U.S.C. § 1379 (b), and that a suit on behalf of the corporation may be maintained on the basis of such a violation. Section 409 (b) provides:

> "It shall be unlawful for an officer or director of any air carrier to receive for his own benefit, directly or indirectly, any money or thing of value in respect of negotiation, hypothecation, or sale of any securities issued or to be issued by such carrier, or to share in any of the proceeds thereof."

The district court held that "negotiation" and "sale" refer only to the case in which an air carrier sells its own securities and not to the case in which it purchases its securities. The court also held that an improved control position, which the individual defendants allegedly received as a result of the reexchange, is not a "thing of value" within the meaning of § 409(b). Noted but not answered by the court was the threshold question whether the Act confers a private right of action for violation of § 409(b).

Like the district court, we assume for purposes of this appeal that § 409(b) confers a private right of action on air carriers. We also assume

that the section may apply to transactions in which the air carrier repurchases rather than sells its own securities. However, we agree with the district court that, at least on the facts alleged in this case, an improved control position does not by itself constitute a "thing of value" as those words are used in § 409(b), and we affirm on that ground.

Plaintiff's contention that control by itself is a thing of value is reasonable enough in the abstract; the difference in value between voting and non-voting stock is only one example of the willingness of investors to pay for a greater voice in the affairs of the company. But his contention is entirely unreasonable when applied to the facts of this case in the light of § 409(b).

Certainly it follows from plaintiff's view of the matter that the exchange here involved is unlawful. But the logic of his argument would mean that the exchange would be equally illegal if the ratio of exchange was entirely fair to National. The $1,800,000 premium allegedly received by Pan American is no part of any value received by the defendant directors and officers. The value which they are said to have received is an improved control position, and that would follow from the exchange regardless of the ratio. As pointed out by Judge McLean, the result of accepting plaintiff's contention would be to prohibit air carriers from reacquiring their own stock if any officer or director was a substantial shareholder.

That § 409(b) should be construed to have such a broad impact is not only unreasonable on its face, but it runs counter to the evident purpose of other sections of the Act. Sections 408 and 409(a) expressly enumerate approximately a dozen control transactions and relationships which are unlawful unless approved by the Board. To superimpose on these detailed sections a proscription which makes no provision for Board approval would be wholly inconsistent with the regulatory pattern. This inconsistency is illustrated by the fact that the Board

found the re-exchange in this case to be in the public interest, although it did not pass on any particular ratio of exchange.

### III. Proposed Amendment of the Complaint

Following dismissal, plaintiff sought permission to amend his complaint. He now argues that the district court abused its discretion in denying his motion. We disagree.

Plaintiff proposed to make four additional allegations. Two alleged deception only by Pan American; a third alleged a failure to advise the New York Stock Exchange of the transaction. Since the complaint has not been dismissed as to Pan American, and the New York Stock Exchange was not a party to the transaction, these allegations would have done nothing to cure the defects in the orginal complaint.

The fourth proposed allegation apparently was intended to establish an entirely new theory by claiming that the transaction violated the rules of the New York Stock Exchange. Whether or not such a violation might give rise to a cause of action against the defendants under state law, we do not think that it does so under federal law. The Exchange itself is under a federal duty to enforce its rules, Securities Exchange Act of 1934, § 6(a), 15 U.S.C. § 78f(a), and this duty may be enforceable in a private suit. See Baird v. Franklin, 141 F.2d 238 (2 Cir. 1944); Kroese v. New York Stock Exchange, 227 F.Supp. 519 (S.D.N.Y.1964). It does not follow, however, that a suit against a listed company or its officers based on violation of an Exchange rule arises under federal law, and we see no reason for so holding.

The judgment of the district court is affirmed.

HAYS, Circuit Judge (dissenting):

In my opinion the plaintiff has stated a claim cognizable under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 thereunder.