**Gail E. COOPER, Plaintiff-Appellant,**

v.

**Vicente V. GARZA, Jr., Ramon Zertuche, Vir Warehouse Co., Inc., Cindy, Inc., Garza and Garza Corporation, H. C. Hall, III and Alfonso Cassell, Defendants-Appellees.**

No. 28191

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 10, 1970.

Marvin Jones, Dallas, Tex., Bruce W. Bowman, Jr., Dallas, Tex., for appellant Gail E. Cooper; Turner, Rodgers, Winn, Scurlock & Terry, Dallas, Tex., of counsel.

William P. Fonville, Dallas, Tex., Hall & Juarez, Horace C. Hall, III, Elmore H. Borchers, Laredo, Tex., for appellee.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

PER CURIAM:

The plaintiff brought this action [1] under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and SEC Rule 10b–5, 17 C.F.R. § 240.-10b–5.[2] The district court held that it

---

* ▮▮▮ Rule 18, 5th Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al., 5th Cir., 1970, 431 F.2d 409, Part I.

1. He did sue derivatively.

2. Section 10 of the Exchange Act, entitled "Regulation of the Use of Manipulative

lacked jurisdiction of the subject matter because the plaintiff failed to allege that the fraud occurred in connection with the purchase or sale of any security. This Court, through the Clerk of Court, requested counsel to file additional briefs in the light of Rekant v. Desser, 5 Cir. 1970, 425 F.2d 872 and Herpich v. Wallace, 5 Cir. 1970, 430 F.2d 792, two recent decisions in which this Court considered "the purchaser-seller" canon.[3] The principles expressed in those cases are consistent with the holding of the district court. We affirm the judgment of dismissal.

In April 1965 the plaintiff, Gail Cooper, and defendant Vicente V. Garza, organized two corporations, the Oxford Development Corporation and Astro-Mart, Inc., to develop an international trade center in Laredo, Texas. The complaint alleges that Cooper, who gave birth to the idea, was to handle the interim construction loan, permanent financing, obtaining of leases from tenants, and overseeing of architectural services and construction. Garza was to provide the flesh and blood to Cooper's skeleton project. He was to furnish the funds required to buy the land, clear title and manage the project until outside financing could be arranged, the construction completed, and the property leased and in operation. According to the complaint, he was also to lend his personal credit and provide management after construction was completed. Garza did indeed furnish funds in excess of $100,000 to the Oxford Development Corporation. For over three years matters went smoothly. In November 1968, however, the parties disagreed over an offer of construction financing. At this point, so the complaint states, Garza informed Cooper, for the first time, that the funds he had furnished were not capital contributions but were loans

and Deceptive Devices," reads in relevant part as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \*

"(b) To use or employ, in connection with the purchase or sale of any security \* \* \* any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rules 10b-5, entitled "Employment of Manipulative and Deceptive Devices," reads as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

"(1) to employ any device, scheme, or artifice to defraud,

"(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

3. In the leading case of Birnbaum v. Newport Steel Corp., 2 Cir. 1952, 193 F.2d 461, cert. denied 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356, the court construed the language "in connection with the purchase or sale of any security" as limiting standing to sue to buyers or sellers of securities.

In Rekant v. Desser, 5 Cir. 1970, 425 F.2d at 877, we said:

*Birnbaum* has been shot at by expert marksmen. The buyer-seller requirement for standing has been criticized as too strict a reading of the rule. Commentators have said the *Birnbaum* has been significantly eroded in a variety of later cases, even in the Second Circuit. *Cf.* Crane Co. v. Westinghouse Air Brake Co., 2 Cir. 1969, 419 F.2d 787. *See also* Kahan v. Rosenstiel, 3 Cir. 1970, 424 F.2d 161 (injunctive relief). Bloody but unbowed, *Birnbaum* still stands. Iroquois Industries, Inc. v. Syracuse China Corp., 2 Cir. 1969, 417 F.2d 963; Greenstein v. Paul, 2 Cir. 1968, 400 F.2d 580.

**580**

from his other companies: defendants Vir Warehouse, Inc., Cindy, Inc., and Garza and Garza Corporation. He said that at his direction the funds he had derived from these companies and had advanced to Oxford Development were not charged to his drawing accounts, but were treated by the companies as loans to Oxford Development Company. Moreover, Garza insisted that the "loans" be repaid in full from the construction funds. For this reason, as a means of quick repayment, Garza demanded that Oxford Development Company accept a construction loan from a Florida company at a high rate of interest. Cooper protested. The disagreement between Garza and Cooper was never resolved. According to the complaint, Garza then "embarked upon a conspiracy and scheme to defraud [the] corporations and [the] Plaintiff of the value of those corporations and render the shares of stock worthless".

Garza and a new partner, defendant Alfonso Cassell, acquired large tracts of land, some adjacent to the Oxford Development property to develop their own trade center with a store to take the place of the proposed Astro-Mart store. Garza took title to the land in the name of Ramon Zertuche, a relative and employee, who was also a member of the Board of Directors of Oxford Development and Astro-Mart. Finally, allegedly, Garza, as president of Oxford Development, without informing Cooper, who was Secretary-Treasurer of the Company, executed mortgages in excess of $300,000 on the companies' land in favor of Vir Warehouse Co., Inc., Cindy, Inc., and Garza and Garza Corporation. The result was to cripple any hope Cooper had of obtaining interim financing. The complaint alleges that Garza threatened that unless Cooper sold his stock for $50,000 (later raised to $100,000) that he would let the Oxford lands lie unused, permit customers of his new International Trade Center to use the Oxford Development lands for parking, and when the one year mortgage notes became due he would foreclose in favor of

Defendants Vir Warehouse Co., Inc., Cindy, Inc., and Garza and Garza Corporation.

The plaintiff alleges that the true value of his stock was $3,150,000 before the defendant began his "manipulative and deceitful practices" and that the present value is no more than $150,000, a loss of $3,000,000 for which the plaintiff demands judgment.

In a second and alternative count, the plaintiff repeats by reference all of the allegations of the complaint, asserts that the fraudulent actions of the defendant Garza and the other defendants have destroyed the value of the real estate ($1,300,000) and projected earnings of $5,000,000 for the next five years, a total of $6,300,000. The plaintiff asked for compensatory damages in the amount of $3,150,000 and exemplary damages in an equal sum for a total of $6,300,000.

In *Herpich* this Court unequivocally adopted the doctrine that for a plaintiff to recover under Rule 10b–5, he "must be a purchaser or seller of the securities involved in connection with the alleged rule violation". *Herpich* 430 F. 2d at p. 806. At the same time, we observed that "We do not say that only those who are purchasers or sellers in the 'strict common law' traditional sense may maintain an action for damages under Rule 10b–5 * * * in deciding whether a plaintiff has standing, we search for what will best accomplish the congressional purpose * * *" Id. Here the acts in question, regardless of the *Herpich* caveat, did not begin until three years after Cooper acquired his stock. And no court has suggested, much less held, that an unaccepted and rejected offer to purchase amounts to a sale or purchase or "arrangement in which [the plaintiff] disposed of his stock". Rekant v. Desser, 5 Cir. 1970, 425 F.2d at 878.

In this Court, dismissals on "barebones pleadings" have a high mortality rate. Due v. Tallahassee Theatres, Inc., 5 Cir. 1964, 333 F.2d 630. See also Millet v. Godchaux Sugars, 5 Cir. 1957, 241

F.2d 264. But the complaint in this case is not an example of barebones pleading, of federal notice pleading. It is extremely detailed. In spite of the explicitness of the complaint, Cooper does not allege nor can we infer from the complaint that when he acquired his stock he was influenced by Garza's misrepresentations, manipulative devices, or failure to disclose material facts. The burden of his argument is that long after the acquisition of his stock, Garza, with the aid of the other defendants, engaged in activities designed to force him to sell his securities in Oxford Development and Astro-Mart at a small fraction of their value. This may be a fraud against Cooper Oxford Development and Astro-Mart, Inc., but this Court is compelled to agree with the district court that:

> "[N]one of the acts complained of occurred in connection with the purchase or sale of any security and that plaintiff makes no allegation that he was damaged as a seller or a purchaser in connection with a purchase or sale of a security."

We note that the plaintiff did not move to amend his complaint.

The judgment is affirmed.

Bryan, Circuit Judge, dissented.