**MANOR DRUG STORES, etc., Plaintiff,**

v.

**BLUE CHIP STAMPS, a corporation, et al., Defendants.**

**Civ. No. 70-2539.**

United States District Court, C. D. California.

May 25, 1971.

J. J. Brandlin, James E. Ryan, Ray E. McAllister, Los Angeles, Cal., for plaintiff.

O'Melveny & Myers, Allyn O. Kreps, Thomas J. Ready, John R. Phillips, Los Angeles, Cal., for defendants Blue Chip Stamps and others.

McCutchen, Black, Verleger & Shea, G. Richard Doty, Peter W. James, H. Peter Stoterau, David T. Peterson, Los Angeles, Cal., for defendant Market Basket.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

KELLEHER, District Judge.

Plaintiff brought this action for actual and exemplary damages as a result of defendants' alleged misleading representations in connection with the offer of certain securities of a corporation reorganized pursuant to a consent decree and final judgment entered by this Court in United States v. Blue Chip Stamp Co. (C.D.Calif., June 5, 1967) Civil No. 63–1552–F, an action arising under the antitrust laws against Blue Chip Stamp Co. (hereafter old Blue Chip) and nine of its shareholder corporations, named defendants herein along with certain directors of old Blue Chip

and Blue Chip Stamps, a corporation, (hereafter new Blue Chip).

The consent decree provided in section V:

Blue Chip is ordered and directed to present to the Court . . . a plan for the reorganization of Blue Chip Stamp Company. . . . Upon approval of the plan by the Court, Blue Chip shall make bona fide and diligent efforts to reorganize the company pursuant to the said plan;

and in section VII further provided:

In the event that Section V becomes inapplicable, Blue Chip may also enter into a reorganization pursuant to a plan for the reorganization of Blue Chip Stamp Company acceptable to the Court.

The reorganization plan adopted by the Court provided, inter alia, for the formation of new Blue Chip and ordered that an:

. . . offering of approximately 621,600 shares of its Common Stock will then be made by New Company to users of Blue Chip Stamps (who issue stamps to their retail customers as a reward for patronage) other than users who are also shareholders of Blue Chip (such users to whom such offering is made are hereinafter referred to as "Users") on a pro rata basis determined by the quantity of stamp pads issued to Users during the period subsequent to March 1, 1964, and prior to a date to be determined which will be not more than 90 days prior to the effective date of the registration statement hereinafter referred to.

The reorganization plan then went on to require registration of the offering under the Securities Act of 1933 and further prescribed that in the event portions of the offering went unsubscribed at the termination of the offering, the unsubscribed shares were to be disposed of by appropriate action of the directors of new Blue Chip. Thereafter, according to the amended complaint, an offering of new Blue Chip "units," consisting of a $100 principal amount debenture and three shares of new Blue Chip Common at a total cash consideration of $101.00, were tendered to the users by means of a prospectus dated August 29, 1968; the offering required the users to exercise their rights on or before November 29, 1968. Plaintiff alleges that the Court intended the offering to be a bargain for the users in compensation for the damages they allegedly suffered as a result of old Blue Chip's antitrust violations. However, the offering shareholders purportedly had no intention of complying in good faith with the terms of the consent decree and permitting the users to exercise their rights under the offer and accordingly conspired to dissuade the users from purchasing the units by including misleading statements in the prospectus; specifically, the amended complaint alleges that the prospectus stated new Blue Chip's income and net earnings would be adversely affected by payment of certain claims against the company and by a substantial decrease in the use of the firm's trading stamp service. As a result of these alleged misrepresentations, plaintiff asserts that it and the other users it claims to represent were induced not to purchase the tendered units and, thereby, suffered damages which it seeks to recover by this action.

Plaintiff contends that the offering shareholders' and directors' alleged misrepresentations violate section 12 of the Securities Act of 1933 [15 U.S.C. § 77*l*] and section 10(b) of the Securities & Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Securities & Exchange Commission Rule 10b–5, promulgated thereunder. A fourth cause of action asserted under pendent federal jurisdiction alleges that plaintiff is a third party beneficiary under the consent decree and that the offering shareholders' and directors' actions breached their duty to plaintiff who may recover therefor. Defendants have moved to dismiss the amended complaint as failing to state a cognizable federal claim; for purposes of these motions, of course, the Court

will take the allegations of the amended complaint as true.

## PLAINTIFF'S CLAIM TO BENEFI-CIARY STATUS

■ Plaintiff claims that the consent decree of June 5, 1967, sought to redress old Blue Chip's alleged antitrust violations by affording non-shareholders of old Blue Chip's trading stamp service, such as plaintiff, the opportunity to become shareholders in a newly organized Blue Chip company at what plaintiff describes as a "bargain basement price." Since the Court intended to benefit plaintiff and other non-shareholder users, plaintiff infers that the offering shareholders owed plaintiff a duty which was breached by the alleged misrepresentations for which plaintiff may recover in Federal Court. Plaintiff's argument is as unmeritorious as it is imaginative.

■ It appears well established that a non-party to an antitrust decree cannot attempt to enforce the decree against the defendant, even though the decree was intended to directly or indirectly benefit the non-party. Accordingly, a non-party does not have standing to punish a defendant for contempt of a decree entered in an antitrust action by the United States which retains the opportunity to enforce or modify the terms of the decree. United States v. American Soc. of Composers, Auth. & Pub., 341 F.2d 1003, 1008 (2d Cir. 1965), cert. denied, 382 U.S. 877, 86 S.Ct. 160, 15 L. Ed.2d 119 (1965). The fact that the decree was intended to benefit certain non-parties does not confer on them an independent cause of action for violations of the decree. Control Data Corp. v. International Bus. Mach. Corp., 306 F.Supp. 839 (D.Minn.1969), aff'd 430 F.2d 1277, 1278 (8th Cir. 1970). In Control Data, plaintiffs were barred from asserting defendants' alleged violations of two prior consent decrees even though plaintiffs did not per se seek to enforce the provisions of the earlier decrees and even though the decrees clear-

ly intended to benefit defendants' competitors, including plaintiffs. The District Court reasoned that to permit private third parties to assert consent decree violations against antitrust defendants would considerably diminish their incentive to enter into such decrees as well as hinder the Government's ability to obtain consent decrees in appropriate cases. Control Data Corp. v. International Bus. Mach., supra, at 846.

Plaintiff's attempt to distinguish the Control Data case by the fact that not all plaintiffs in Control Data were in existence at the time of the decrees therein is untenable since the very purpose of the decree was to stimulate competition, including the formation of new firms, in the relevant industry. Moreover, even though Control Data involved a private antitrust claim by the third party, there appears to be no reason why the rule of that case should not apply with equal, if not greater, force where the plaintiff, as herein, pleads a non-antitrust cause of action which depends on the prior decree. The Court concludes that if plaintiff is to have any action for defendants' alleged misrepresentations, its claim must stand or fall on the provisions of the securities law which it asserts defendants have violated.

## '33 ACT, SECTION 12

■ Section 12 of the Securities Act of 1933 provides that any person who fraudulently sells a security in interstate commerce or through the use of the mails ". . . shall be liable to the person purchasing such security. . . ." See Greater Iowa Corp. v. McLendon, 378 F.2d 783, 789, 790 (8th Cir. 1967), affirming the dismissal of an issuer's complaint attacking the validity of minority shareholders' voting trust and stating that § 12(2) was not designed to afford protection to persons who are not investors nor those not in privity with them. Slack v. Stiner, 358 F.2d 65 (5th Cir. 1966). Slavin v. Germantown Ins. Co., 174 F.2d 799 (3d Cir. 1949), rev'g on other grounds 74 F.Supp. 876 (E.D. Pa.1947). Since this section of the Act expressly limits recovery to private liti-

gants who qualify as "purchasers," it clearly has no application to the present action where the gravamen of the amended complaint is that due to defendants' alleged fraud plaintiff was induced not to purchase the offered securities.

## '34 ACT, SECTION 10 AND RULE 10b–5

■ Section 10 of the '34 Act makes unlawful the use of ". . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities & Exchange] Commission may prescribe. . . ." Thereunder, the Commission has promulgated Rule 10b–5, which provides:

It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, *in connection with the purchase or sale of any security.* (emphasis added) [17 C.F.R. § 240.10b–5]

Both parties state that the Ninth Circuit Court of Appeals has not had occasion to rule whether an offeree, such as plaintiff, who has not in fact purchased or sold securities as a result of conduct fraudulent within the meaning of the Rule, may recover damages in a private civil action. There has, however, been considerable discussion of the problem elsewhere.

The watershed case appears to be Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), holding that Rule 10b–5 does not sanction private recovery by a minority shareholder who complained of an insider's sale of corporate control without affording the minority shareholders an opportunity to sell their shares at the same price. However, to fully effectuate the purpose of the Rule, the *Birnbaum* decision has generally been given a fairly restrictive interpretation by limiting its application to situations where the plaintiff was not a party to a purchase or sale transaction. See the dissent of Frank, J., in Joseph v. Farnsworth Radio & Television Corp., 198 F.2d 883 (2d Cir. 1952). Indeed, the exceptions or limitations to an across the board application of the *Birnbaum* doctrine are legion, usually resting upon a liberal construction of what constitutes a purchase or sale for purposes of Rule 10b–5; thus, for example, where defrauded sellers are induced or forced to postpone their sale, an action under Rule 10b–5 will lie, Stockwell v. Reynolds & Co., 252 F.Supp. 215 (S.D.N.Y. 1965), Opper v. Hancock Securities Corp., 250 F.Supp. 668 (S.D.N.Y.1966), aff'd 367 F.2d 157 (2d Cir. 1966); a minority shareholder was deemed a forced seller for purposes of Rule 10b–5 even though he had neither accepted defendant's tender offer nor surrendered his stock pursuant to a "short form" merger, Vine v. Beneficial Finance Co., Inc., 374 F.2d 627 (2d Cir. 1967), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L. Ed.2d 460 (1967); nor does it appear a consummated purchase or sale is required to invoke operation of the Rule, Commerce Reporting Co. v. Puretec, Inc., 290 F.Supp. 715, 718 (S.D.N.Y. 1965). Without question, such broad interpretations of the Rule are both sound and necessary in order to vitalize the antifraud purposes of the Rule and the securities laws. S. E. C. v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969).

Nonetheless, the Court considers the Rule's application properly limited to situations where the defrauded party can show actual damages, not merely the loss of a possible gain contingent upon factors which never came into existence. 15 U.S.C. § 78bb(a). Plaintiff's case aptly demonstrates the soundness of so limiting operation of the Rule; the causal nexus between defendants' alleged misrepresentations and plaintiff's failure to purchase the Blue Chip "units" depends upon a number of highly uncertain factors such as proof that but for defendants' misrepresentations plaintiff would have, indeed, purchased the offered "units;" the Court doubts that plaintiff, if permitted to maintain this action, could satisfactorily carry the burden of such proof; in view of this uncertainty, damages herein appear highly speculative. Kremer v. Selheimer, 215 F.Supp. 549, 552, 553 (E.D.Pa. 1963). This uncertainty is not, it is believed, peculiar to plaintiff's case but applies to any party who, like plaintiff, has not in fact entered into a transaction having the effect of a purchase or sale of securities; since the securities laws do not sanction recovery for losses based on speculation or conjecture, the Court concludes that a party in plaintiff's position is not entitled to an action under these laws.

None of the numerous cases cited by plaintiff persuades the Court that the *Birnbaum* requirement of a purchase or sale has been discarded as an essential element for maintenance of an action under Rule 10b–5. Despite some fairly extensive criticism of the requirement and predictions of its pending "demise," Entel v. Allen, 270 F.Supp. 60 (S.D.N. Y.1967), Lowenfals, "The Demise of the Birnbaum Doctrine: A New Era for Rule 10b–5," 54 Va.L.Rev. 268 (1968), the Court finds ample authority that the *Birnbaum* requirement retains validity and represents sound policy. Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963, 967 (2d Cir. 1969), cert. denied, 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970). Greenstein v. Paul,

400 F.2d 580, 581 (2d Cir. 1968). 3 Loss, Securities Regulation (2d ed. 1961) 1469. 6 Loss, Securities Regulation (Supplement 1969) 3620.

Upon the foregoing, it is hereby ordered that defendants' motions to dismiss are granted and the amended complaint is dismissed with prejudice.