**Raymond L. LUTGERT,
Plaintiff-Appellant,**

v.

**The VANDERBILT BANK et al.,
Defendants-Appellees.**

No. 74–2184.

United States Court of Appeals,
Fifth Circuit.

Feb. 27, 1975.

George Vega, Jr., Naples, Fla., Carl L. Shipley, Washington, D. C., for plaintiff-appellant.

Jose R. Garcia-Pedrosa, William C. Lewis, Jr., Miami, Fla., John W. Emerson, Naples, Fla., for defendants-appellees.

Before DYER, MORGAN and GEE, Circuit Judges.

DYER, Circuit Judge:

The sole issue to be determined on this appeal is whether the court below properly dismissed Lutgert's action seeking declaratory relief for lack of subject matter jurisdiction under Rules 10b–5 and 10b–17, as a result of his fail-

ure to allege that he was a "purchaser or seller" of securities. We hold the dismissal to be proper and affirm.

Defendants Ingram, Rogers and Hahn were directors of the First National Bank and Trust Company of Naples (First National) and were organizers of defendant The Vanderbilt Bank (Vanderbilt). Ingram, Rogers and Hahn desired to distribute the subscription rights in the newly organized Vanderbilt to certain shareholders of First National and Citizens National Bank of Naples (Citizens). Because the interlocking directorate of these banks would cause Vanderbilt to become an "affiliate" bank, the Federal Deposit Insurance Corporation (FDIC) required in May of 1971, as a condition for obtaining FDIC insurance for Vanderbilt, that all shareholders of First National and Citizens be entitled to receive a 100% pro rata distribution of the Vanderbilt stock. An amended application to the FDIC was filed by the organizers in October and accepted in November of 1971. It provided that all shareholders of First National and Citizens as of the record date of March 31, 1971, would be entitled to a pro rata right to subscribe to Vanderbilt stock.

Lutgert instituted this action on behalf of the class of persons that purchased stock in First National after the record date of March 31, 1971. He alleged that with the purchase of the First National stock these persons were entitled to all the rights enuring in that stock, including the Vanderbilt subscription rights, and that these persons were defrauded by the failure of defendants to disclose the March 31, 1971, record date until August 20, 1973.

The trial court, upon motion by defendants, dismissed the case for lack of subject matter jurisdiction. The dismissal was based upon the failure of Lutgert to allege in his complaint that he was a purchaser or seller of Vanderbilt stock.

Underlying this decision is the effect and application of the "purchaser-seller" requirement of Section 10(b)[1] and Rule 10b–5,[2] known as the *Birnbaum* rule. Birnbaum v. Newport Steel Corp., 2 Cir. 1952, 193 F.2d 461. Lutgert urges that this Court modify or relax the *Birnbaum* rule in light of the "touch test" referred to by the Supreme Court in Superintendent of Insurance v. Bankers Life and Casualty Co., 1971, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128. Lutgert does not specifically suggest what modifications would be appropriate.

This Court has recently clarified its interpretation of *Bankers Life* and its effect on the *Birnbaum* rule in Smallwood v. Pearl Brewing Co., 5 Cir. 1974, 489 F.2d 579, and Sargent v. Genesco, Inc., 5 Cir. 1974, 492 F.2d 750. In *Sargent* the Court eliminated any doubt that it continued to adhere to the *Birnbaum* rule by expressly reaffirming the vitality of the purchaser-seller requirement in this circuit. 492 F.2d at 764.

The Court in *Sargent* was careful to point out that as it interpreted *Bankers Life,* the "touch test" referred to by the Supreme Court applies to defendant's conduct, not to plaintiff's status. For a plaintiff to obtain standing it is not sufficient that he is somehow touched or

1. 15 U.S.C.A. § 78j provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\*   \*   \*   \*   \*   \*

(b) To use or employ, *in connection with the purchase or sale of any security* registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. (Emphasis supplied).

2. 17 C.F.R. § 240.10b–5:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

\*   \*   \*   \*   \*   \*

*in connection with the purchase or sale of any security.* (Emphasis supplied).

affected by the purchase or sale of securities, but rather once the plaintiff establishes himself as a purchaser or seller, the "defendant's fraudulent conduct need not specifically relate to the plaintiff's securities transaction. . . . Instead, the requisite nexus exists if such conduct merely touches upon the plaintiffs' purchase or sale. *See* Smallwood v. Pearl Brewing Co." Sargent v. Genesco, Inc., 492 F.2d at 763. To have subject matter jurisdiction the plaintiff must therefore demonstrate that he is a purchaser or seller of securities.

It is clear that Lutgert failed to allege that he was a purchaser of the Vanderbilt stock. Indeed, he would not have been able to do so since, in the words of the trial court, "his alleged cause of action springs from the claim that he has been 'arbitrarily' *denied* this right to purchase." (Emphasis added).

█ Lutgert, however, attempts to bring himself within the purchaser-seller rule through his purchase of First National stock. He argues that the purchase of First National stock carries with it dividends, rights, and all other incidents of ownership, one of which is the right to purchase Vanderbilt stock. Indeed, a right to purchase a security is a "security" as defined in the Securities Exchange Act of 1934. 15 U.S.C.A. § 77b(1). Nevertheless, Lutgert's argument must fail.

It is uncontroverted that the March 31, 1971, record date was selected and included in the amended application to the FDIC in October of 1971. The FDIC accepted this application in November of 1971. Lutgert's first purchase did not take place until May of 1972. Consequently, since the record date had been set prior to Lutgert's purchase, the First National stock at the time of his purchase did not carry with it the right to purchase the Vanderbilt stock. Lutgert, therefore, cannot qualify, through his purchase of First National stock, as a purchaser of the right to subscribe to Vanderbilt stock. It is difficult to perceive how Lutgert could have been defrauded by the failure of defendants to disclose the record date until August 20, 1973, when he was not entitled to subscribe to the Vanderbilt stock at the time of his First National purchases.[3]

Lutgert also asserts a claim for relief based upon the failure of defendants Ingram, Rogers, Hahn and the Vanderbilt bank to disclose the record date of the right to purchase Vanderbilt stock within ten days prior to the setting of that date in contravention of Rule 10b–17.[4]

Rule 10b–17 was adopted by the SEC in June of 1971, and therefore was effective at the time the record date was set in October or November of 1971. Nevertheless, the *Birnbaum* purchaser-seller requirement would preclude Lutgert from standing to assert the violation.

█ Although Rule 10b–17 does not contain a purchaser-seller requirement, § 10(b), under which Rule 10b–17 was promulgated, does contain such a provision. Thus a plaintiff must also be a purchaser or seller of securities to confer subject matter jurisdiction upon the federal courts under Rule 10b–17.

For example, if the owner of First National stock prior to the record date were to sell his stock within the ten-day disclosure period referred to in Rule 10b–17 unaware, due to defendants' nondisclosure, that the record date had been set, it is conceivable that he might make out a claim for relief under Rule 10b–17.

---

3. This analysis renders it unnecessary to consider whether under Florida law or under "federal common law" the right to purchase Vanderbilt stock would inherently enure to the First National stock holders.

4. 17 C.F.R. § 240.10b–17:
    (a) It shall constitute a "manipulative or deceptive device or contrivance" as used in section 10(b) of the Act . . . to fail to give notice in accordance with paragraph (b) of this section. . . .
    *    *    *    *    *    *
    (b) Notice shall be deemed to have been given in accordance with this section only if:
    (1) Given to the National Association of Securities Dealers, Inc., no later than 10 days prior to the record date involved.
    . . . .

Plaintiff in such a case would have been a seller of First National stock and would have been defrauded in connection with that sale. It would appear that this is the type of claim for which Rule 10b–17 was intended to provide relief. Lutgert, however, was not a seller of a security, and although he was a purchaser of First National stock, this purchase was in no way "touched" by any asserted deception, since the alleged harm is the deprivation of the right to purchase Vanderbilt stock, a right that is no way attached to the First National stock at the time of the purchase. Consequently, Lutgert is not a purchaser or seller within the meaning of Section 10(b), thereby depriving the federal courts of subject matter jurisdiction over the Rule 10b–17 claim.

■ Finally, Lutgert attaches significance to the fact that he is not seeking damages, but rather is requesting declaratory relief. He relies on a footnote by this Court in *Smallwood* that other circuits "have explicitly relaxed the *Birnbaum* requirement for actions seeking injunctive relief," thus suggesting that this Court might do so in a suit for declaratory judgment. 489 F.2d at 589, n. 8.

The rationale behind the relaxation of the *Birnbaum* rule in some jurisdictions when injunctive relief is sought, however, is to *prevent* the deception which if carried to its fruition, *would have* provided a plaintiff standing to sue for damages. *See* Mutual Shares Corp. v. Genesco, Inc., 2 Cir. 1967, 384 F.2d 540, 546; Kahan v. Rosenstiel, 3 Cir. 1970, 424 F.2d 161, 173, cert. denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290. In this case, even if we were to accept the attempted analogy of injunctive *vis a vis* declaratory relief, Lutgert's argument is unpersuasive, since at no time would Lutgert have been able to satisfy the purchaser-seller requirement in a suit for damages.[5]

Affirmed.

---

5. This is not to intimate that this Court would relax the *Birnbaum* rule if injunctive relief were sought. As this Court stated in Small-

right column

wood, this is an open question. 489 F.2d at 589, n. 8.