**Jose H. Rodriguez CADIZ, Plaintiff,**

v.

**Hiram Mercado JIMENEZ, et al, Defendants.**

**Civ. No. 81–0015 (JP).**

United States District Court, D. Puerto Rico.

Sept. 12, 1983.

David Efron, Hato Rey, P.R., for plaintiff.

William H. Preston, Hato Rey, P.R., for defendants.

## ORDER

PIERAS, District Judge.

On May 20, 1983, at 3:30 p.m., attorney for plaintiff, David Efron, and attorney for defendants, William H. Preston, met with the Court for a status conference. The Court was appraised on the defendant's pending motion for dismissal and plaintiff's opposition.

The facts, as alleged in the complaint, indicate that plaintiff, José H. Rodríguez Cadiz, is a shareholder of Nutritional Food Service of Puerto Rico, Inc., a Puerto Rican corporation, and is the owner of 333⅓ shares of said corporate entity. Until August, 1980, plaintiff was also an employee of said corporation with the defendants and shareholders, Hiram Mercado Jiménez, Pedro Borrás and William Carter.

All of the above persons incorporated Nutritional Food Service in 1976 under the Laws of Puerto Rico and said corporation was engaged in the business of selling pre-cooked frozen meals to local institutional cafeterias. The business of the corporation was successful, although dividends were never paid out. On March 3, 1980, the personal defendants incorporated a new corporation called Prime Choice of Puerto Rico, Inc., which engaged in the same line of business and directly competed with Nutritional Food Service of Puerto Rico, Inc.

In view of this conflict, the plaintiff requested an explanation and that the conflict be solved and remedied to no avail.

The plaintiff alleges a fraudulent conspiracy on the part of defendants Jiménez, Borrás, Carter and their corporate attorney Martín J. Rovira García, to force or squeeze-out the plaintiff from his participation in Nutritional Food Service and to affect the value of his shares in said corporation by syphoning funds from Nutritional and using them for Prime Choice.

Plaintiff also alleges that the operations of Prime Choice have been substantially and unofficially financed by Nutritional and said operations have been disguised as "corporate loans" which have not been approved by nor informed to plaintiff.

Plaintiff, in paragraph 23 of the complaint, states that part of this conspiracy was to dilute his equity interest in Nutritional when during 1980, defendants Mercado and Borrás were awarded 10,000 additional shares of Nutritional Food Service of Puerto Rico, Inc. which is 1,000% (one thousand percent) or ten times the amount of the total shares originally issued. No explanation or reasonable motive was officially or otherwise afforded for this transaction.

It is alleged that the scheme was of such a nature that the defendants would dispose of plaintiff's interest in the corporation for a very low price, and would take away his business as well as his share of the withheld undistributed dividends earned by Nutritional. Plaintiff in paragraph 32 of the complaint states that the true value of his 333⅓ shares of stock in Nutritional Food Services of Puerto Rico, Inc. be paid to him as the defendants' action is to be taken into account when determining the dilution of his equity interest.

For purposes of a motion to dismiss under F.R.Civ.P. 12(b)(6), the factual allegations of the complaint must be taken as true. *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980). Also, the complaint must be liberally construed in the light most favorable to plaintiff. *Conley v. Gibson,* 355 U.S. 41, 44, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). From the facts of the complaint, a review of the Securities and Exchange Act of 1934, Section 10b, 15 U.S.C. Sec. 78j(b)[1] and SEC Rule 10b–5, 17

---

1. Section 10(b), Securities Exchange Act of 1934.

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the

C.F.R. Section 240, 10b–5 [2] is necessary in order to properly decide this matter.

Originally, Section 10(b) of the 1934 Act did not, by itself, provide an express civil remedy for its violation, but there is no indication that the Securities Commission actually considered the question of private civil remedies under Rule 10b–5. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 724, 730–731, 95 S.Ct. 1917, 1919, 1922–1923, 44 L.Ed.2d 539 (1975); S.Rep. No. 792, 73d Cong., 2d Sess., 5–6 (1934); *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461, 463 (2nd Cir.1952).

■ The case law is more generous as district courts now have jurisdiction to hear private liability claims based on Section 10(b). *Mullis v. Merrill Lynch, Pierce, Fenner and Smith,* 492 F.Supp. 1345 (D.C.Nev. 1980); *Hecht v. Harris, Upham & Co.,* 430 F.2d 1202 (9th Cir.1970).

The present situation hinges on whether the *Birnbaum* rule is applicable. Judge Augustus Hand, writing for the Second Circuit in the case of *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2nd Cir.1952), announced that the SEC Act grants rule-making power on the Commission to condemn deceptive practices in the purchase or sale of securities; the rules were aimed only at a fraud perpetrated upon the buyer or seller of securities and they have no relation upon a breach of fiduciary duty by corporate insiders in fraud upon those who were not buyers or sellers.

For our inquiry into the jurisdiction of this Court, the central question then becomes whether the issuance of additional stock by the corporation is a "purchase or sale" as mandated by the *Birnbaum Rule* and the SEC Act. If so, then jurisdiction is present.

The cases of *Schoenbaum v. Firstbrook,* 405 F.2d 215 (2nd Cir.1968); *Ruckle v. Roto Amer. Corp.,* 339 F.2d 24 (2nd Cir.1964) and *Hooper v. Mountain States Sec. Corp.,* 282 F.2d 195 (5th Cir.1960) stand for the proposition that issuance by a corporation of its own shares to its majority shareholder constitutes a "sale of securities" within the statute and rules of the Securities Exchange Commission.

In *Schoenbaum, supra,* the issuance by Banff Oil Ltd., of its own stock to Aquitaine Company of Canada, Ltd., was a sale of securities within the meaning of Section 10(b) and Rule 10b–5. The Banff stockholders could bring an action for damages, since Aquitaine exercised a controlling influence over the issuance to it of the Banff stock for a wholly inadequate consideration—an act of fraud and deceit in connection with the purchase or sale of securities. The case of *Ruckle v. Roto American Corp., supra,* involves a proposal by the corporation to issue additional shares with the president of the corporation retaining control. Material information was concealed to one of the directors whose approval was obtained for the transaction. The Second Circuit found the nondisclosure to constitute a fraud stating:

> If in this case, the board defrauded the corporation into issuing shares either to its members or others, we can think of no reason to say that redress under Rule

---

mails, or any facility of any national securities exchange—

   \*   \*   \*   \*   \*   \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

**2.** "It shall be unlawful for any person, directly or indirectly by the use of any means or instrumentality of interstate commerce, or of the

mails or of any facility of any national securities exchange,

(a) To employ any device, scheme or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as fraud or deceit upon any person, in connection with the purchase or sale of any security."

10b–5 is precluded, though it would have been available had anyone else committed the fraud. There can be no more effective way to emasculate the policies of the federal securities law than to deny relief solely because a fraud was committed by a director rather than by an outsider. Denial of relief on this basis would surely undercut the congressional determination to prevent the public distribution of worthless securities. *Ruckle,* 339 F.2d at 29.

■ When a fraud is alleged in the issuance of corporate stock, the legislative standard is violated and a private right of action may be maintained. *Hooper v. Mountain States Securities Corp.,* 282 F.2d 195, 201–202 (5th Cir.1960). The *Hooper* case deals with issuance of Alabama corporate stock in return for spurious assets and again, the fraudulent scheme was within the ambit of the Securities and Exchange Act of 1934.

In the case at bar, it is alleged that the defendant-corporation issued more stock for the purpose of diluting the ownership percentage of plaintiff. This additional stock issuance distinguishes the present factual situation from the factual situation in the Opinion and Order of Hon. Carmen C. Cerezo in *Rubí v. Aguilar, et al,* Civil Case No. 80–1021(CC), D.P.R. (March 23, 1982).

■ In *Ruí, supra,* cited by the defendants as authority, there was never a seller-purchaser contractual relationship because the parties could never reach an agreement on the price of the stock. Thus, accepting all the facts in *Rubí* as true, the complaint does not fit the protection of the Act. Plaintiff in *Rubí* was not entitled to federal protection since the parties only conducted negotiations and failed to agree on the purchase price of the stock. Furthermore, under the Civil Code of Puerto Rico, a contract to buy and sell must contain a sum certain in order to be executed and binding on the parties. Section 1336 of the Civil Code of Puerto Rico, 31 L.P.R.A. Sec. 3743. Section 10(b) requires a purchase or sale of stock and *Rubí* is inapplicable to the case at bar because further issuance of corporate stock by that corporation is a sale of security. The Supreme Court in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 752, 95 S.Ct. 1917, 1933, 44 L.Ed.2d 539 (1975), states that "while the *Birnbaum* rule has been flexibly interpreted by lower federal courts, we have been unable to locate a single decided case which would support the right of persons who were in the position of respondent here to bring a private suit under Rule 10b–5, (as) respondent was not only not a buyer or seller of any security, but it was not even a shareholder of the corporation." In the case at bar, Mr. José H. Rodríguez Cádiz was a shareholder of the defendant corporation and when said corporation issued additional shares through a scheme to dilute his equity interest in that corporation, Rule 10b–5 empowers this Court to exercise its jurisdiction.

From all of the above, and after a thorough review of the case law, motions and facts, the Court concludes that defendants' motion to dismiss is without merit and is hereby DENIED.

IT IS SO ORDERED.